HARRY L. MCCONNELL V. P. E. MCKILLIP.

FILED APRIL 21, 1904.    No. 13,308.

1. **Game Laws:** POLICE POWER.  CONSTITUTIONAL LAW.  Under the
police power of the state, the legislature has power to declare
property which may be used only for an unlawful purpose to be
a public nuisance and authorize the same to be abated sum-
marily by public officers, but, if property, of a nature innocent
in itself and susceptible of a beneficial use, has been used for an
unlawful purpose, a statutory provision subjecting it to summary
forfeiture to the state as a penalty or punishment for the wrong-
ful use, without affording the owner thereof opportunity for a
hearing, deprives him of his property without due process of
law.

2. **Act Unconstitutional.** Section 3, article III, chapter 31 of the Com-
piled Statutes, in so far as it provides for the seizure, forfeiture
and transfer of title to property without providing for a hearing,
*held* unconstitutional and void.

ERROR to the district court for Boone county: JAMES
N. PAUL, JUDGE.  *Affirmed.*

*F. N. Prout, Attorney General, Noris Brown, William
B. Rose* and *C. E. Spear,* for plaintiff in error.

*H. C. Vail, contra.*

LETTON, C.

On the 3d day of August, 1902, P. E. McKillip, D. B.
McMahon and W. E. Harvey were engaged in hunting
prairie chickens in Boone county, in violation of the
game law of 1901, using three shotguns.  The deputy
game warden, Harry L. McConnell, seized the three shot-
guns, while they were so engaged in hunting prairie
chickens.  P. E. McKillip was the owner of the guns,
which were valued at the sum of $75.  McKillip brought
an action of replevin against the defendant, deputy game
warden, for their possession.  The case was tried to the
district court upon an agreed statement of facts substan-
tially as above stated.  The court found for the plaintiffs
and rendered judgment accordingly.  The defendant

brings error to this court. The game warden claims the right to hold the guns under authority of section 3, article 3, chapter 31 of the Compiled Statutes (Annotated Statutes, 3272), which is as follows:

"All guns, ammunition, dogs, blinds and decoys, and any and all fishing tackle, in actual use by any person or persons while hunting or fishing in this state without license or permit, when such license or permit is required by this act, shall be forfeited to the state; and it is made the duty of the commissioner and every officer charged with the enforcement of this act to seize, sell or dispose of the same in the manner provided for the sale or disposition of property on execution, and to pay over the proceeds thereof to the county treasurer for the use of the school fund."

He contends that the statute authorizing game wardens to seize and forfeit to the state all guns in actual use by persons hunting in violation of the game law is a valid exercise of the police power of the state, while the defendant in error contends that the aforesaid statutory provision violates the provisions of the 14th amendment to the constitution of the United States which declares: "Nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws," and of section 3, article I of the constitution of the state of Nebraska, which provides: "No person shall be deprived of life, liberty or property, without due process of law."

The protection of wild animals suited for the purpose of food from indiscriminate slaughter by hunters has been the object of legislation from the most ancient times. The theory upon which the lawmaking power assumes to act is, that all wild game belongs to the state in its sovereign capacity as a trustee for the whole of the public, and that, consequently, the state may, as a proper exercise of its police power, adopt such rules and regulations with reference to its preservation, and such penalties with reference

to a violation of such regulations, as are necessary to accomplish the end desired—the preservation to the people of the state of the pleasure, sport and profit derived from the hunting, pursuit and capture of the wild animals living therein.

In this case the defendant in error, McKillip, admits that it is within the power of the state, in the just exercise of its police powers, to prohibit the killing of fish and game at certain seasons of the year, but denies that it has the right to take his property from him and confiscate it to the state without giving him his day in court. He contends that the police power in regard to the confiscation of guns, dogs, blinds, decoys and fishing tackle is upon exactly the same footing as the police power in regard to the regulation of the sale of intoxicating liquors, and that, since, before liquors which have been seized are destroyed, there must be a judicial determination by a court as to whether the owner was engaged in unlawfully selling or keeping for sale intoxicating liquors, so there must be as to his property. He further contends that, since the statute contains no provisions for determining whether the property was liable to condemnation for the criminal acts of those who had it in their possession, and since it merely authorized the game warden to seize the property without warrant or process, to condemn it without proof, and to sell it as upon execution, it deprives the defendant of the property rights which are guaranteed to him by the constitution.

The laws of the state of New York declare that any net or other means or device for taking fish found in the waters of the state, in violation of the laws for the protection of fish, is a public nuisance, and authorize game constables to destroy such nets. Certain nets were seized and destroyed, and an action being brought against the officers for their value under these provisions, the court of appeals of the state of New York held that the declaration by the legislature that the nets or other devices found in the waters of the state are a public nuisance, is a valid

exercise of the legislative power; and that the further provision requiring the destruction of such nets, such destruction being an incident of the power of abatement of the nuisance, and not a forfeiture inflicted as a penalty upon the owner, is not in violation of the constitutional prohibition of taking property without due process of law; but further held that that part of the act authorizing the destruction of nets found upon the shore was unconstitutional, since nets not found in the waters are not a nuisance per se.  Lawton v. Steele, 119 N. Y. 226.  A writ of error being sued out to the supreme court of the United States from this judgment, that court affirmed the judgment of the supreme court of New York, and say, Mr. Justice Brown delivering the opinion:

"The main, and only real difficulty connected with the act in question is in its declaration that any net, etc., maintained in violation of any law for the protection of fisheries, is to be treated as a public nuisance, 'and may be abated and summarily destroyed by any person, and it shall be the duty of each and every protector aforesaid and every game constable to seize, remove and forthwith destroy the same.'  The legislature, however, undoubtedly possessed the power not only to prohibit fishing by nets in these waters, but to make it a criminal offense, and to take such measures as were reasonable and necessary to prevent such offenses in the future. It certainly could not do this more effectually than by destroying the means of the offense.  *  *  *  In this case there can be no doubt of the right of the legislature to authorize judicial proceedings to be taken for the condemnation of the nets in question, and their sale or destruction by process of law.  Congress has assumed this power in a large number of cases, by authorizing the condemnation of property which has been made use of for the purpose of defrauding the revenue.  Examples of this are vessels illegally registered or owned, or employed in smuggling or other illegal traffic; distilleries or breweries illegally carried on or operated, and buildings standing upon or near the

boundary line between the United States and another country, and used as depots for smuggling goods. In all these cases, however, the forfeiture was decreed by judicial proceeding. But where the property is of little value, and its use for the illegal purpose is clear, the legislature may declare it to be a nuisance, and subject to summary abatement. Instances of this are the power to kill diseased cattle; to pull down houses in the paths of conflagrations; the destruction of decayed fruit or fish or unwholesome meats, or infected clothing, obscene books or pictures, or instruments which can only be used for illegal purposes. While the legislature has no right arbitrarily to declare that to be a nuisance which is clearly not so, a good deal must be left to its discretion in that regard, and if the object to be accomplished is conducive to the public interests, it may exercise a large liberty of choice in the means employed. *Newark & S. O. H. C. R. Co. v. Hunt,* 50 N. J. Law, 308; *Blazier v. Miller,* 10 Hun (N. Y.), 435; *Mouse's Case,* 12 Rep. (7 Coke) 63; *Stone v. Mayor,* 25 Wend. (N. Y.) 157, 173; *American Print Works v. Lawrence,* 21 N. J. Law, 248, 23 N. J. Law, 590." *Lawton v. Steele,* 152 U. S. 133.

The state of Wisconsin has an act substantially the same as that of New York, providing for the protection of fish and authorizing the destruction of nets, declaring the same to be public nuisances. In the case of *Bittenhaus v. Johnston,* 92 Wis. 588, the validity of this provision came before the supreme court of Wisconsin. The court say, it has been repeatedly said, neither the 14th amendment, nor any other amendment to the constitution of the United States, " 'was designed to interfere with the power of a state, sometimes termed its "police power," to prescribe regulations to promote the health, peace, morals, education, and good order of the people, and to legislate so as to increase the industries of the state, develop its resources, and add to its wealth and prosperity.' *Barbier v. Connolly,* 113 U. S. 31; *Mugler v. Kansas,* 123 U. S. 623; *In re Kemmler,* 136 U. S. 436, 448." The court

further say: "The plaintiff, having voluntarily put the nets to an unlawful use which made them public nuisances under the statute, is in no position to recover damages from the defendants for having, as public officials, obeyed the law in abating the nuisance by seizing and destroying the nets. Of course, the plaintiff had his right of action to determine whether the nets were or were not in such unlawful use. We must hold that the plaintiff has not been deprived of his property without due process of law."

No case has been brought to our attention in which a court has construed a statute which provides for the seizure, forfeiture to the state and sale of property of the kind involved in this case, which has been used in violation of the game laws. As a rule the statutes have declared nets and like devices, which can only be used in violation of law, to be public nuisances, and provided for their abatement by their destruction by public officers.

The distinction between nets, which under the laws of the states providing for their destruction can only be used for an unlawful purpose, and fire arms which under the laws of this and other states may be used for many other purposes, innocent and lawful in their nature, is clearly apparent, and has been recognized by our legislature in the act under consideration.

In section 1, article III of this act, the legislature of this state has provided:

"Every net, seine, trap, explosive, poisonous or stupefying substance or device used or intended for use in taking or killing game or fish in violation of this act, is hereby declared to be a public nuisance and may be abated and summarily destroyed by any person, and it shall be the duty of every such officer authorized to enforce this act to seize and summarily destroy the same, and no prosecution or suit shall be maintained for such destruction; provided, that nothing in this division shall be construed * * * as authorizing the seizure or destruction of fire arms, except as hereinafter provided."

.The provisions of this section as to nets and like devices are substantially the same as those contained in the game laws of New York and Wisconsin, heretofore referred to, and with the conclusions of these courts with reference to laws of like nature, we have no fault to find. But there is a broad distinction between this section and section 3 under which the plaintiff in error justifies.

The legislature has not declared a gun to be a public nuisance and has not ordered its destruction as an abatement of the same. The seizure of the property provided for by this section is evidently intended, not only to put it out of the power of the offending person to carry on the destruction of game by depriving him of the implement of destruction, but also to operate as a penalty or punishment for an unlawful act committed by him. It is of the nature of a common law forfeiture of goods upon conviction of a crime.

In *Icck v. Anderson*, 57 Cal. 251, it appeared that the plaintiff had rented certain boats and nets to a Chinese fisherman; that the property was used in violation of a statute of the state which provided that all nets, seines, fishing tackle, boats and other implements used in catching or taking fish in violation of the provisions of this chapter shall be forfeited, or may be seized by a peace officer of the county or his assistant, and may be by him destroyed or sold at public auction, upon notice posted in the county for five days. The court held that so much of the statute as authorized the property to be sold without judicial proceedings was unconstitutional and void. It will be noticed that boats were included, which were susceptible of a lawful use.

*Varden v. Mount*, 78 Ky. 86, was an action in conversion to recover the value of certain hogs. The town ordinance provided that it was the duty of the town marshal to take up hogs running at large upon the streets, to advertise them for three days, and to offer them at public sale to the highest bidder, and, after paying the expenses thereof, to pay over to the rightful owner the balance, if

any. The court held the right to forfeit "should not be extended beyond impounding the hogs. When that is done, the necessity for summary and precipitate action ceases, and judicial proceedings looking to forfeiture may then properly begin," and that the ordinance was unconstitutional.

*Lowry v. Rainwater,* 70 Mo. 152, was an action to recover the value of a dining table. The defendant pleaded that he was a member of the board of police commissioners of the city of St. Louis, and that under the statute it was his duty, when he had knowledge that there was a prohibited gaming table kept or used in the city of St. Louis, to issue a warrant directing some officer of the police force to seize and bring before him such gaming table, and made it his duty to cause the same to be publicly destroyed by burning or otherwise. These provisions were held unconstitutional and void.

In *Lawton v. Steele,* 119 N. Y. 226, the supreme court of New York was of the opinion that it was only because the nets found in the water were a public nuisance that they might be destroyed, and that if the destruction of the nets was intended as a penalty it was unconstitutional, and also that nets not actually found in the water could not be seized. "But," say the court, "the legislature can not go further. It can not decree the destruction or forfeiture of property used so as to constitute a nuisance as a punishment of the wrong, nor even, we think, to prevent a future illegal use of the property, it not being a nuisance *per se,* and appoint officers to execute its mandate. The plain reason is that due process of law requires a hearing and trial before punishment, or before forfeiture of property can be adjudged for the owner's misconduct. Such legislation would be a plain usurpation by the legislature of judicial powers, and under guise of exercising the power of summary abatement of nuisances, the legislature can not take into its own hands the enforcement of the criminal or *quasi* criminal law. See opinion of Shaw, C. J., in *Fisher v. McGirr,* 1 Gray, 1, and

in *Brown v. Perkins*, 12 Gray, 89." When the same case reached the supreme court of the United States, while the majority of the court held that the law in question was a valid exercise of the police power, Chief Justice Fuller, with whom concurred Mr. Justice Field and Mr. Justice Brown, filed a dissenting opinion, in which he says: "The police power rests upon necessity and the right of self protection, but private property can not be arbitrarily invaded under the mere guise of police regulation, nor forfeited for the alleged violation of law by its owner, nor destroyed by way of penalty inflicted upon him, without opportunity to be heard." *Lawton v. Steele*, 152 U. S. 133, 144.

In *Sentell v. New Orleans & C. R. Co.*, 166 U. S. 698, it is said by Justice Brown: "But in determining what is due process of law we are bound to consider the nature of the property, the necessity for its sacrifice, and the extent to which it has heretofore been regarded as within the police power. So far as property is inoffensive or harmless, it can only be condemned or destroyed by legal proceedings, with due notice to the owner; but so far as it is dangerous to the safety or health of the community, due process of law may authorize its summary destruction."

In *Colon v. Lisk*, 153 N. Y. 188, a later case than *Lawton v. Steele*, a statute, providing that every vessel unlawfully used in interfering with oysters planted in the waters of the state may be seized by the game protectors, and upon six days' notice a justice might take evidence and, if found to be so engaged, the vessel should be ordered sold and the proceeds paid to the commissioners of fisheries, game and forestry, was held unconstitutional, the court saying: "It is to be observed, in passing, that the use for which vessels and fixtures may be forfeited under this act does not constitute a nuisance, either at common law, or under this, or any other statute. Nor is the property itself a nuisance. Hence, it is obvious that the validity of this act can not be maintained upon the

ground that either the act or the property is a public nuisance, and, consequently, that the legislature had the power to authorize its abatement."

In *Chicago, B. & Q. R. Co. v. State,* 47 Neb. 549, 565, this court held: "The legislature can not, under the guise of a police regulation, arbitrarily invade private property or personal rights," but it must appear to the court, when such regulation is called in question, that there is a "clear and real connection between the assumed purpose of the law and its actual provisions."

There is a clear and marked distinction between that species of property which can only be used for an illegal purpose, and which therefore may be declared a nuisance and summarily abated, and that which is innocent in its ordinary and proper use, and which only becomes illegal when used for an unlawful purpose. We know of no principle of law which justifies the seizure of property, innocent in itself, its forfeiture and the transfer of the right of property in the same from one person to another as a punishment for crime, without the right of a hearing upon the guilt or innocence of the person charged, before the forfeiture takes effect. If the property seized by a game keeper or warden were a public nuisance, such as provided for in section one, he had the right under the duties of his office at common law to abate the same without judicial process or proceeding, and the great weight of authority is to the effect that such common law rights have not been abrogated or set aside by the provisions of the constitution; but if the property is of such a nature that, though innocent in itself and susceptible of a beneficial use, it has been perverted to an unlawful use, and is subject to forfeiture to the state as a penalty, no person has a right to deprive the owner of his property, summarily, without affording opportunity for a hearing and without due process of law. The usual course of proceedings in such case has been either, as in admiralty and revenue proceedings, to seize the property, libel the same in a court of competent jurisdiction and have it con-

49

demned by that court, or, as in criminal matters, to arrest the offender and to provide that upon his conviction the forfeiture of the property to which the offender's guilt has been imputed, and to which the penalty attaches, should take place. These have been the methods of procedure for centuries. No other has been pointed out to us in the brief of the plaintiff in error. We are therefore constrained to the opinion that, in so far as the section under consideration provides for the seizure, forfeiture and transfer of title to property without a hearing upon the guilt or innocence of its owner, it violates the constitutional provisions. Whether or not a forfeiture can be provided for as a punishment for crime under our constitution is a question not raised or decided in this case.

We recommend that the judgment of the district court be affirmed.

DUFFIE and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.