State v. Del Rio Turnpike Co.

STATE *v.* DEL RIO TURNPIKE CO.

(*Nashville.*   December Term, 1914.)

1. **CONSTITUTIONAL LAW.   Due process of law.**

A party by his conduct cannot so forfeit a right that it may be taken from him without judicial proceedings in which the forfeiture shall be declared. Forfeiture of rights in property cannot be adjudged by legislative acts, and confiscations without judicial hearing after due notice are void, as being without due process of law. (*Post, pp.* 605-608.)

Acts cited and construed:   Acts 1835, ch. 54.

Cases cited and approved:   White's Creek Turnpike Co. v. Marshall, 61 Tenn., 104; Westervelt v. Gregg, 12 N. Y., 209; Lawton v. Steele, 152 U. S., 133; North America Cold Storage Co. v. Chicago, 211 U. S., 306; McConnell v. McKillip, 71 Neb., 712; State v. Derry, 171 Ind., 18; Darst v. People, 51 Ill., 286; Strong v. State, 129 Tenn., 472.

Cases cited and distinguished:   Bank of Columbia v. Akely, 4 Wheat., 235; Detroit v. Detroit Plank Road, 43 Mich., 140; Malone v. Williams, 118 Tenn., 418.

Code cited and construed:   Sec. 1748 (S.).

Constitution cited and construed:   Art. 1, sec. 8.

2. **CONSTITUTIONAL LAW.   Due process of law.   Forfeiture of turnpike charter.   "Property."**

Shannon's Code, sec. 1748 et seq., providing that the county court of each county shall appoint three superintendents of turnpike roads and toll bridges, to see that they are kept in repair as required by law, and that whenever, in the opinion of a majority of them, any road or bridge shall be in bad condition, they may open the gates until it is put in good order. receiving for their services such compensation as the county court may allow payable by the owners of such roads and bridges, and that any

State v. Del Rio Turnpike Co.

owner demanding any toll or closing any gate required to be kept open may be indicted, and on conviction its charter forfeited, was not intended to abate a nuisance, but to impose a penalty for neglect, and to force the performance of a duty by declaring a forfeiture of the right to take toll, which is an attribute or usufruct of property, and hence "property" and, so construed, violates the due process clause of Const. U. S. Amend. 14, and Const. Tenn. art. 1, sec. 8, declaring that no one shall be deprived of his property, but by the law of the land. (*Post, pp.* 608-610.)

Cases cited and approved: Powell v. Sammons, 31 Ala., 552; Ohio Turnpike Co. v. Waechter, 25 Ohio Cir. Ct. R., 605.

## FROM WILLIAMSON.

Appeal from the Circuit Court of Williamson County.—DOUGLAS WIKLE, Judge.

W. H. SWIGGART, assistant attorney-general, for the State.

J. C. EGGLESTON, TYLER BERRY, and FAW & CROCKETT, for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

The turnpike company was indicted for a violation of the provisions of the Code which relate to the opening of its tollgates by the county superintendents of turnpike roads and to a prohibition of the owner's thereafter demanding or receiving toll. The company de-

murred to the indictment, raising the question that the act of the legislature is unconstitutional, in that it is an infringement of the due process clause of the fourteenth amendment of the federal constitution, and of article 1, section 8, of the constitution of this state, which provides that no man shall be deprived of his property, but by the judgment of his peers or the law of the land.

The trial judge sustained the demurrer, and the State has appealed to this court, and assigned that action as error.

By Acts 1835, ch. 54, brought forward into the Code of 1858, and appearing as section 1748 *et seq.* of Shannon's Code, it is provided in substance as follows: That there shall be appointed by the county court of each county three superintendents, whose duty it shall be to look over the turnpike roads and toll bridges in the county, and see that they are kept in repair as required by law. That whenever, in the opinion of a majority of said superintendents, any road or bridge shall manifestly be in bad condition, they may open the gates of such public way until it is put in good order and condition; said superintendents to receive for their services such compensation as shall be allowed by the county court, which shall be paid by the owners of said roads and bridges. That if any owner of a turnpike or toll bridge demand or receive any toll, or close any gate while the gate is required to be kept open by the superintendents, he may be indicted

therefor, and, on conviction, the court shall adjudge
and declare the charter to be forfeited.

The question here raised was discussed, but not de-
cided, in the case of *White's Creek Turnpike Co.* v.
*Marshall* (1872), 2 Baxt. (61 Tenn.), 104, 113, particu-
larly in the opinion of Chancellor East, whose opinion
in the chancery court was published in the report of
the case along with the opinion of Judge McFarland
in this court. Chancellor East, widely recognized as a
lawyer of great ability, clearly indicated his opinion
to be that the act was unconstitutional on the grounds
stated; but, finding another ground upon which the
determination of the cause could be rested in favor of
the complainant turnpike company, he did not in fact
pass upon the constitutional question. He said on that
point, however:

"Complainant alleges the act of 1835 to be uncon-
stitutional, in this: That it suspends a vested right
to collect the tolls without due process or 'due course
of law,'' as it is expressed in our constitution; that its
rights are passed upon and judgment given without a
trial, without witnesses, without a jury, in secret, with-
out any of the forms common to courts of justice, with-
out the privilege of appearing by its agents or coun-
sel. 'Due course of law' undoubtedly means in due
course of legal proceedings, according to those rules
and forms which have been established for the benefit
of private rights. [*Westervelt* v. *Gregg*] 12 N. Y.,
209 [62 Am. Dec., 160]. Mr. Justice Johnson, of the
supreme court of the United States, in the case of *Bank*

*of Columbia* v. *Okely,* 4 Wheat., 235, 5 L. Ed., 559, has stated the meaning of these terms so accurately and truly as to defy criticism. 'That they were intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice.' 'A hearing before condemnation and judgment before dispossession.' Whatever may be the powers of the legislature over remedies or purely remedial laws, no case, I presume, can be found in which this doctrine has been carried to the extent that the legislature could divest rights without a hearing, and condemn the property of a party unheard, or otherwise affect him in his person or property. The intelligence of the present age denounces such obsolute and arbitrary action of government as tyrranical, and refers it to that people whose fundamental laws are based upon unquestionable and absolute monarchy.

"While this act is subject to much and severe criticism, I shall refrain from further comment upon it, unless there are no other causes upon which a decision can be rested for the present."

In no published opinion of this court has the question since been passed upon, and it is squarely presented for decision on the record of the pending cause. In the *White's Creek Turnpike Case,* Judge McFarland referred to the opinion of Chancellor East for its ability and strong argument on the constitutional point, but shared with the chancellor the view that

State v. Del Rio Turnpike Co.

it was not necessary to pass upon the question, saying:

"We agree with him that it is not proper to pass upon the constitutionality of the act of 1835 until the decision of that question becomes imperative."

The doctrine stated in broad terms by Judge Cooley (Const. Lim. [7th Ed.] 518) is:

"Nor can a party by his conduct so forfeit a right that it may be taken from him without judicial proceedings, in which the forfeiture shall be declared in due form. Forfeitures of rights and property cannot be adjudged by legislative acts, and confiscations without a judicial hearing after due notice, would be void, as not being due process of law."

The same eminent authority in constitutional law had said, while on the bench of the State of Michigan, in *Detroit* v. *Detroit Plank Road,* 43 Mich., 140, 5 N. W., 275:

"It cannot be necessary at this day to enter into a discussion in denial of the right of government to take from either individuals or corporations any property which they may rightfully have acquired. In the most arbirtary times such an act was recognized as pure tyranny, and it has been forbidden in England ever since Magna Charta, and in this country always. It is immaterial in what way the property was lawfully acquired; whether by labor in the ordinary avocations of life, by gift or descent, or by making profitable use of a franchise granted by the State. It is enough that

it has become private property, and it is thus protected. by 'the law of the land.' "

Respecting the words of Magna Charta, of quite the equivalent import, Blackstone says that they "protected every individual of the nation in the free enjoyment of his life, his liberty, and his property, unless declared forfeited by the judgment of his peers or the law of the land." 4 Bl. Com., 424.

Instances of the power of government to proceed without a preliminary notice or hearing to the destruction of property of a private person are afforded by cases dealing with the police power. Where the condition of such property is imminently dangerous to the safety or offensive to the morals of a community, it may be treated and abated as a nuisance *per se*. Instances of this are the power to kill cattle suffering from a contagious disease, to destroy diseased fruit trees, to destroy decayed foodstuffs, infected clothing, obscene books or pictures, and imminently dangerous structures. A somewhat similar phase is presented in the power to destroy or pull down houses not themselves dangerous, but which stand in the path of a conflagration. The only justification lies in the element of overruling necessity presented by the situations above indicated. *Lawton* v. *Steele*, 152 U. S., 133, 14 Sup. Ct., 499, 38 L. Ed., 385; *North American Cold Storage Co.* v. *Chicago*, 211 U. S., 306, 29 Sup. Ct., 101, 53 L. Ed., 195, 15 Ann. Cas., 276; Freund, Police Power, section 520.

But it is only in relation to nuisances of the character indicated that notice and hearing are not to be deemed requisite.

In regard to the power of individuals or officials, delegated to them by legislation, to act in the destruction of property they may in their judgment deem to be a nuisance, which property does not belong to any of the classes just referred to, this court, speaking through the present Chief Justice, said, in *Malone* v. *Williams*, 118 Tenn., 418, 103 S. W., 805, 121 Am. St. Rep., 1002:

"The president and the other officers and agents of the city are themselves to decide upon these matters, and to act upon their decisions, and to impose burdens or destroy property as they may deem best; that is, upon these subjects they hold all legislative, judicial, and executive powers—that is to say, arbitrary power. Such provisions cannot be upheld in a free country. No man is wise enough, or good enough, to be vested with arbitrary power over the property of his fellow citizens. No body of men, composing a municipal council or other organization, is wise enough, or good enough, to be intrusted with such power. The provisions which give these powers are in violation of section 8 of article 1 of our State constitution."

We think it apparent that a turnpike out of repair may not be treated as so inherently dangerous and imminently perilous or disastrous to the public as to fall into the class with the above species of property so far as the application to its owner of the usual tests

of due process of law is concerned. Mr. Freund, in his work on Police Power, says:

"The power of summary abatement does not extend to property in itself harmless, but which is put to unlawful use, or is otherwise kept in a condition contrary to law. . . . The unlawful use may, however, be punished, and the punishment may include a forfeiture of the property used to commit the unlawful act. While in many cases this would be an extreme measure, it is subject to no express constitutional restraint, except where the constitution provides that every penalty must be proportionate to the offense. . . . Such forfeiture is not an exercise of the police power, but of the judicial power; i. e., the taking of the property does not strictly subserve the public welfare, but is intended as a punishment for an unlawful act. Hence forfeiture requires judicial proceedings—either personal notice to the owner or at least a proceeding *in rem,* with notice by publication." Sections 525, 526; Tiedeman, State and Federal Control, 825; *McConnell* v. *McKillip,* 71 Neb., 712, 99 N. W., 505, 65 L. R. A., 610, 115 Am. St. Rep., 614, 8 Ann. Cas., 898; *State* v. *Derry,* 171 Ind., 18, 85 N. E., 765, 131 Am. St. Rep., 237; *Darst* v. *People,* 51 Ill., 286, 2 Am. Rep., 301; *Strong* v. *State,* 129 Tenn., 472, 166 S. W., 967.

The statute does not in terms declare a turnpike so conditioned a nuisance, and the steps it prescribes to be taken by the superintendents of turnpikes certainly do not look towards any immediately *abatement* of their condition as a nuisance. Indeed, the requirement

State v. Del Rio Turnpike Co.

is, not that the gates be locked to prevent traffic, but that the gates shall be kept open, without opportunity given to the owners to demand toll of the traveling public; and so far from tending to abate a situation dangerous to the public this statutory prescription tends naturally and certainly to increase the travel on and use of the turnpike thus held open free to all comers. The danger incident to a state of bad repair would thus be augmented, not removed or lessened.

Obviously the purpose of the statute is not to abate a nuisance so much as it is to impose a penalty for neglect, and to force the performance of a duty by the declaration of a forfeiture. This forfeiture is of the right to take toll; the loss of revenue, without any safeguard being afforded the ownership ever or by any means to save itself harmless by way of recovering such tolls. If it be said that the owners have a right, not given in terms or on terms by the statute in question, to resort to a court of equity for an injunction and to there test the lawfulness of the superintendents' action in opening the gates, it yet remains a fact that the company would stand to lose the revenue that would have been collectible by it pending the litigation or the court's permission to lower the gates.

Of forfeitures, legislative forfeitures meet with most disfavor in the law's regard. Daniel Webster, in his great argument in the *Dartmouth College Case,* denounced pure "legislative forfeitures" as being intolerable evils to be avoided.

131 Tenn. 39

The principle upon which the cases proceed in ruling that the destruction of property declared to be flagrant nuisance does not deprive the owner of his property without due process of law is that there can be in a true sense no property right in a public nuisance, and that therefore there is no property right involved for protection under the constitution's guaranty, especially in the event of controlling exigency.

This principle can have no application to the facts of this case. It does not require the citation of authority to make manifest that the right to take toll in due course, being an attribute or the usufruct of property, is a property right within the meaning of the constitutional clauses invoked by the company in the pending case. 6 R. C. L., 472, 473.

Reported cases dealing with the question, in the immediate phase presented, are surprisingly few. In our investigation we have found only two, and both of these are in accord in ruling that the suspension of the right to take toll under similar statutes, without precedent notice and hearing, is a violation of the due process of law and the "law of the land" constitutional provisions. *Powell* v. *Sammons,* 31 Ala., 552; *Ohio Turnpike Co.* v. *Waechter,* 25 Ohio Cir. Ct. R., 605.

We are constrained to hold that, for the reasons indicated, the statute denied to the appellee company the protection guaranteed to it by both the state and federal constitutions, and that the trial judge did not err in holding bad the indictment on the grounds set out in the demurrer.

Affirmed.