ROBERTSON, Justice:
L. C. Kellogg, doing business as Western. Auto Associate Store, sold a 16 gauge-Browning automatic shotgun to one Ralph Coggins on August 7, 1964, and on that day entered into a conditional sales contract with him, in which contract plaintiff retained title to the said shotgun until the full purchase price had been paid. There was-a balance due on the purchase price of $146.14 principal at the time the said shotgun was seized and declared contraband by the game warden.
The agreed statement of facts covers the other facts and even states the legal question involved in the seizure, forfeiture and' sale of the shotgun, as follows:
“At the time of said sale, the Plaintiff" had no knowledge that the said shotgun-would be used unlawfully or for unlawful purposes.
“Prior to December IS, 1965, Ralph Coggins was apprehended by the game- *537 wardens of the State of Mississippi working in Clay County for violating the provisions of Section 5866-04 of the Mississippi Code of 1942, by using lights and shooting deer at night. That the said shotgun was in his possession at the time of his arrest and was being used in the hunting of deer at night. That the game warden declared the said shotgun contraband as provided by the statute and turned it over to the Defendant herein with directions for the Defendant to advertise and sell said shotgun as is provided by Section 5866-06 of the Mississippi Code of 1942, being a part of Chapter 149 of the Laws of Mississippi of 1956.
“That no process of any kind or any character from any Court was ever served upon the Plaintiff in connection with the confiscation of said shotgun or the declaring of it contraband.
“That the Plaintiff did not file any ■claimant’s action in the Justice Court of the district in which the said Ralph Coggins was apprehended violating the law and in which district the said gun was taken and confiscated under authority of Chapter 149 of the Laws of Mississippi of 1956, as provided for under Section 5866-05.
“That the first notice of any legal -action coming to the attention of the Plaintiff was the posting of the notice of sale by the Defendant herein of said shotgun upon the bulletin board at the Court House. That before the sale thereof the affidavit was made and a Writ of Replevin was issued for the replevin of ■said gun.
“That the question presented by the pleadings and these facts is whether or not Chapter 149 of the Laws of 1956, and especially Sections 4, 5, and 6 thereof, are unconstitutional and unenforceable as against the claim and right of the Plaintiff to possession of said gun, he having never parted with title thereto, because said sections are violative of the Fourteenth Amendment of the Constitution of the United States and Section 14 of the Constitution of the State of Mississippi.
“It is agreed by and between the parties hereto that no other issue is presented by the facts pleaded except the constitutionality of said acts as to the Plaintiff and his rights as the holder of the title to said shotgun under the conditional sales contract attached hereto as ‘Exhibit A’.”
An Affidavit in Replevin and a Declaration in Replevin were made and filed in a Justice of the Peace Court. Upon trial, the Justice of the Peace entered judgment for the defendant, Joe E. Strickland, Sheriff and Tax Collector of Clay County, Mississippi. The case was appealed to the Circuit Court of Clay County and tried on an agreed statement of facts. The court found that the plaintiff failed to claim the shotgun which had been seized as contraband by officers of the Game and Fish Commission within 10 days of seizure as provided by Section 5866-05 of the Mississippi Code of 1942 and affirmed the judgment of the justice of the peace. The defendant was awarded possession of the shotgun and directed to dispose of said shotgun as provided by statute.
No issue is made by the defendant of the longstanding ruling that a writ of replevin does not lie for property in custodia le gis. Union Motor Car Co. v. Farmer, 151 Miss. 734, 746, 118 So. 425, 427 (1928); Stringer v. State, 229 Miss. 412, 422, 91 So.2d 263, 267 (1956). We make no issue of this point but proceed to the sole question of the constitutionality of the statutes as applied to this particular plaintiff under the peculiar facts of this case.
Mississippi Code of 1942 Annotated, Section 5866-04 (Supp.1964) (being Mississippi Laws 1956, chapter 149, section 5), provides, in part, as follows:
“Any firearm, equipment, appliance, conveyance or other such property used directly or indirectly in the hunting or *538 catching or capturing or hilling of deer at night with any headlight or any other lighting device, * * * a/re hereby declared and made contraband property and shall be confiscated and forfeited to the State of Mississippi and shall be seized by any employee of the state game and fish commission or other officer of the law including any sheriff or deputy sheriff, and no property rights shall exist in any person natural or artificial or be vested in them in any such property used by them directly or indirectly in the above manner or as a means of transportation as aforesaid. Upon the seizure of such property it shall be delivered to the sheriff of the county in which said property shall have been used and shall he retained by him in his official capacity until disposed of in accordance with the provisions of this act, * * (Emphasis added.)
Mississippi Code of 1942 Annotated, Section 5866-05 (Supp.1964) (being Mississippi Laws 1956, chapter 149, section 6), provides that:
"Any person claiming the property so seized as contraband property may at any time within ten (10) days from the date of seizure file with the justice of the peace of the district in which said property is held, or circuit clerk of said county if value is over Two Hundred Dollars ($200.00), a sworn claim in writing requesting a hearing and stating his interest in the property seized a/nd the reasons why he is entitled to the possession of said property and why it should not be sold as herein provided.” (Emphasis added.)
Mississippi Code of 1942 Annotated, Section 5866-06 (Supp.1964), (being Mississippi Laws 1956, chapter 149, section 7), provides for the sale of seized property in the following manner:
"If no such claim is filed to said property within the said ten-day period, the said property shall be and is hereby forfeited without further proceedings and! sold at public auction for cash to the highest and best bidder within sixty (60)-days from the date of seizure after advertising the same for at least fifteen' (15) days before said sale by posting-two (2) notices at the courthouse door of the county in which said property was-seized and which notice shall contain a description of the property to be sold-and a statement of the time and place of sale.” (Emphasis added.)
The game warden and the sheriff followed strictly the provisions of these statutes in seizing the shotgun, declaring it contraband and thus forfeited, and in advertising it for sale at public auction.
It is noted that the statutes sitpra provide for no notice, actual or constructive, to the owner or owners out of possession, of the seized property before the property is declared forfeited and offered for sale. Because of this fatal defect, these statutes, Sections 5866-04 to 5866-06, Mississippi’ Code of 1942 Annotated (Supp.1964), are unconstitutional as to an owner out of possession and innocent of knowledge of the illegal purpose for which the firearm or other equipment is being used. They violate the Fourteenth Amendment to the United States Constitution and Section 14 of the Constitution of the State of Mississippi, as to such an owner out of possession. There must be notice of some kind, either actual or constructive, and an opportunity afforded to be heard before the property of an innocent owner out of possession can be forfeited; otherwise, the true owner is deprived of his property without due process of law.
There are many expressions of the general law on this subject. One of the best is contained in 16A C.J.S. Constitutional Law § 569(4) (1956) wherein it is said:
“Due process of law requires essential fairness and justice in judicial proceedings. In its procedural aspect, the constitutional guaranty of due process of law assures to every person his day in *539 court and the benefit of the general law, and means that there can be no proceeding against life, liberty, or property without observance of those general rules established in our system of jttrisprudence for the security of private rights. * * *.” Id. at 571.
"Due process of lavs has been held to mean the right to be heard. So, its essential or indispensable elements, or, according to other authority, its absolute fundamentals, or minimal requirements, ■are notice and opportunity to be heard ■or to defend. The legislature is without ■authority to dispense with these requirements of due process; and the due process guaranty of hearing means a right ■in persons, not a mere privilege to be ■extended to them by tribunals according to their ex parte judgment as to whether a hearing should be had. * * * ” Id. at 572, 574-575.
“The foregoing protective principles are not confined to strictly court proceedings, but extend to every proceeding which may deprive a person of life, liberty, or property whether the process be judicial or administrative or executive in its nature. * * * ” (Emphasis added.) Id. at 578.
A case very similar to the instant case is that of McConnell v. McKillip, 71 Neb. 712, 99 N.W. 505, 65 L.R.A. 610 (1904). In that case P. E. McKillip, D. B. McMahon, and W. E. Harvey, each with a shotgun, were engaged in hunting prairie chickens in violation of the Nebraska game law of 1901. The deputy game warden, Harry L. McConnell, seized the three shotguns while they were so engaged in the illegal hunting. McKillip was the owner of the three guns, and he brought an action of replevin against the defendant deputy-game warden for possession of the guns. The Supreme Court of Nebraska affirmed the judgment for the plaintiff. The Nebraska law provided that all guns, ammunition, dogs, blinds and decoys used in hunting without a license or permit shall be forfeited to the State, and made it the duty of every officer charged with the enforcement of this act to seize, sell or dispose of the same in the manner provided for the sale or disposition of property on execution. The plaintiff contended that the statute was unconstitutional in that it contained no provision for determining whether the property was liable to condemnation for the criminal acts of those who had it in their possession, and since it merely authorized the game warden to seize the property without warrant or process, to condemn it without proof, and to sell it as upon execution that it deprived the true owner of property rights which are guarantied to him by the Constitution.
The Nebraska Court, in making a distinction between property that may be declared a nuisance and summarily abated and that which is also useful in a lawful way, had this to say:
“There is a clear and marked distinction between that species of property which can only be used for an illegal purpose, and which therefore may be declared a nuisance and summarily abated, and that which is innocent in its ordinary and proper use, and which only becomes illegal when used for an unlawful purpose. We know of no principle of law which justifies the seizure of property, innocent in itself, its forfeiture, and the transfer of the right of property in the same from one person to another as a punishment for crime, without the right of a hearing upon the guilt or innocence of the person charged before the forfeiture takes effect. If the property seized by a game keeper or warden were a public nuisance, such as provided for in section 1, he had the right under the duties of his office at common law to abate the same without judicial process or proceeding, and the great weight of authority is to the effect that such common-law rights have not been abrogated or set aside by the provisions of the Constitution; but if the property is of such a nature that, though innocent in itself and susceptible *540 of a beneficial use, it has been perverted to an unlawful use, and is subj ect to forfeiture to the state as a penalty, no person has a right to deprive the owner of his property summarily, without affording opportunity for a hearing and without due process of law. The usual course of proceedings in such case has been either, as in admiralty and revenue proceedings, to seize the property, libel the same in a court of competent jurisdiction, and have it condemned by that court, or, as in criminal matters, to arrest the offender, and to provide that upon his conviction the forfeiture of the property to which the offender’s guilt has been imputed, and to which the penalty attaches, should take place. These have been the methods of procedure for centuries. No other has been pointed out to us in the brief of the plaintiff in error. We are therefore constrained to the opinion that, in so far as the section under consideration provides for the seizure, forfeiture, and transfer of title to property without a hearing upon the guilt or innocence of its owner, it violates the constitutional provisions. * * * ” 99 N.W. at 509.
The Mississippi Legislature has provided for proper notice to the owners of vehicles, conveyances, or other means of transportation used in handling or transporting liquor. See Section 2618 of the Mississippi Code of 1942 Annotated.
A 1933 case from our sister State of Louisiana involving statutes which did not provide for notice to the true owner is the case of Finance Sec. Co. v. Conway, Supervisor of Public Accounts (Morreale, Intervener), 176 La. 456, 146 So. 22, 23 (1933). In that case, the Legislature passed a law levying a tax on malt extract, derivatives and combinations thereof. It clothed the supervisor of public accounts with certain powers to enforce the law among which were:
“ * * * the further power to seize and confiscate ‘any automobile, truck, boat, conveyance, vehicle or other means of transportation, other than a common carrier, caught or detected transporting malt extract, derivatives or combinations' thereof’ without the tax being paid or bond furnished for its payment.
“In the same paragraph and section the supervisor of public accounts, or hiS' assistants, is directed, after ten days' notice by advertisement, at least twice in the official parish paper wherein the confiscation or seizure is made, to proceed' to sell through the sheriffs of the several parishes of the state, at public auctionr to the highest bidder for cash and without appraisal, any and all such property seized and confiscated; the funds derived' from the sales to be paid into the state treasury, and credited in the manner provided for the tax collected under the statute,
“Assuming to act under the authority of the legislative act, an agent of the supervisor of public accounts seized a certain Ford truck while it was being used in the transportation of malt on which the tax liad not been paid. One Vincent A. Morreale was operating the truck at the time the seizure was made.” (Emphasis added.) 146 So. at 22.
The Finance Security Company was the assignee of a Conditional Sales Agreement and was successful in recovering possession of the Ford truck.
The Supreme Court of Louisiana, in first stating the legal question involved and then ruling thereon, said:
“Only the validity of the second paragraph of section 6 of the legislative act is challenged in this court, and the general question arises whether the statutory provision falls within the inhibition of the federal and state Constitutions that no person shall be deprived of life, liberty, or property without due process of law.
“The statute makes no provision for notice to the owner of the property nor *541 to any other interested person. It merely authorizes the officer who has seized the property to adjudge its forfeiture and by giving notice in a newspaper to sell it at public auction through the sheriff of the parish in which the seizure is made.
“An exhaustive examination of the decisions of Other courts fails to disclose a case sustaining the power of the Legislature to declare a forfeiture and direct a sale of property without judicial proceeding for its condemnation or monition or notice, actual or constructive, to its owner. The decisions, on the contrary, uniformly deny any such right or power. * * *” 146 So. at 23.
As we have already pointed out, the statute under consideration provides no remedy for the owner of the property seized and confiscated; it requires no notice, personal or otherwise; it authorizes no proceeding against the property seized; it makes no provision for any hearing to the owner nor for any mode of trial if he should accidentally appear to defend his property. In the nature of things, such a statute, it appears to us, is invalid so far as it attempts to confiscate the property of a third person not charged with, nor convicted of, any of the offenses denounced therein.
“Defendant’s contention that plaintiff, as the holder of a conditional sales contract, is not the owner of the automobile in dispute, is not well founded.
“The sale of the automobile took place in Mississippi. Under the law of that state, the vendor of an automobile by a conditional sale retains title to the car until the purchase price is paid.” 146 So. at 26.
The Mississippi statutes are in almost the exact words of the Louisiana statutes so clearly and forcefully condemned by the Louisiana Supreme Court.
We hold that when the legislature failed to provide for any notice, actual or constructive, to the true owner out of possession that it thereby violated the due process of law clause of the United States and' Mississippi Constitutions. Sections 5866-04 to 5866-06 are, therefore, unconstitutional in their application to the peculiar facts of this case. The judgment of the lower court is reversed and judgment rendered here-for the appellant.
Reversed and judgment here for appellant.
GILLESPIE, P. J., and PATTERSON,. INZER and SMITH, JJ., concur.