## ALDINGER *v.* STATE.

### [75 South. 441, Division A.]

1. INTOXICATING LIQUORS. *Transporting liquors. Forfeiture of vehicles. Statute.*

    Under Laws 1916, chapter 103, section 16, providing for the forfeiture of vehicles used in violating the liquor laws, this statute supplementing Code 1906, section 1750, providing that proof that the car was not used with the owner's knowledge or consent shall be a complete defense, where in a suit by the state for the forfeiture of a vehicle used in transporting intoxicating liquors, the undisputed facts showed that neither the taxicab owner, nor chauffer knew that a passenger was using the car to transport intoxicating liquors and that the owner had not been negligent in employing the chauffer and had directed him not to use the car for such illegal purposes, in such case the court could not order the car forfeited and destroyed.

2. VIOLATION OF LIQUORS LAWS. *Transportation. Presumption of knowledge.*

    The fact that an automobile is used by a passenger for the unlawful transportation of intoxicating liquors makes out a *prima-facie* case of the guilty knowledge of the owner of the vehicle, which may however be rebutted by proven facts in the case.

APPEAL from the circuit court of Panola county.

HON. E. D. DINKINS, Judge.

Suit by the state of Mississippi against John H. Aldinger for the forfeiture of a vehicle used in transporting intoxicating liquors. From a judgment of forfeiture, defendant appeals.

The facts are fully stated in the opinion of the court.

*Ed. G. Bell* and *J. B. Carothers,* for appellant.

*Frank Roberson,* Assistant Attorney-General, for appellee.

SYKES, J., delivered the opinion of the court.

This is a suit involving the question of whether or not under chapter 103 of the Laws of 1916 the circuit court has the power to subject to forfeiture and destruction a Cadillac automobile owned by the appellant, John H. Aldinger, under the following agreed statement of facts, viz.:

"It is agreed by the undersigned attorneys, as representatives of the state of Mississippi and J. H. Aldinger in cause No. 1039 in the circuit court of the Second court district of Panola county, Miss., that the said cause may be heard by Judge E. D. Dinkins in vacation at Batesville, Miss., on August 7, 1916, and that an appeal may be prosecuted, if desired, to the supreme court under the same conditions, etc., as if same was heard at regular term time; that the same may be heard by the said judge and decision made by him, hereby waiving a jury; and that the following statement of facts are the true facts of the cause, and shall be taken and accepted by the court as the facts as fully as if sworn to by witnesses herein:

"That J. H. Aldinger is the true and only owner of the seven passenger Cadillac automobile in this cause, and was the true and only owner on July 2, 1916, on the day and the date same left Memphis, Tenn., for Batesville, Miss., with J. R. Summers as a passenger, with Lee Anthony and his helper as drivers of said car; that upon receipt of a telephone call to garage in which said J. H. Aldinger stored his cars, and in his absence and without his knowledge, the said Anthony, who was the regular driver of said car and authorized to hire same, took the said car and went to the Arkansas Supply Company, a wholesale liquor house, for the passenger, J. R. Summers, for Batesville, Miss.; that the porter at said Arkansas Supply Company, a wholesale liquor house, and which was known by said Anthony to be a wholesale liquor house, loaded several packages in said car; that

said Anthony and his helper did not then know that said packages, consisting of six cases of whisky, each containing twenty-four quarts, were whisky, nor did they absolutely know that same was whisky until they reached Coldwater, Miss., when they were told by said Summers that the same contained whisky; that the said car proceeded from Memphis, Tenn., to Batesville, Miss., with said Summers as passenger.

"That said Summers, who was taken as a passenger, contracted and agreed to pay for the use of said car the sum of two dollars per hour for the use of said car for said trip; that the car in controversy in this cause had never before transported any liquor in violation of law, nor had it ever been used in a violation of the laws of the state of Mississippi in other way; that the said J. H. Aldinger did not know that the car had so been used, and was not aware that said car was not in the city of Memphis until a telephone call from Batesville, Miss., by Lee Anthony, advising him that he was in jail charged with a violation of the state law, but, on the contrary, the said Aldinger had given positive instructions to said Lee Anthony and his helper never to use said car in transporting liquors into Mississippi or in violation of any law of said state; that the said car had been used in the taxicab business, and was being so used on the day same left Memphis, Tenn., for Batesville, Miss.; that the said J. H. Aldinger was not in any way connected with the Arkansas Supply Company, or any other liquor house, and did not know J. R. Summers at all, and had never had any dealings with him at all.

"That the said automobile is of the standard pattern of seven passenger Cadillac automobile of its model, and is of no evidential value, and is not held as evidence in any lawsuit pending in any court, or contemplated in any court. That when said Anthony reached Batesville, with the passenger and the said whisky, he drove said car on a residence street for the purpose of giving Summers an opportunity to unload said whisky, and said

whisky was unloaded by Summers secreted in some weeds near the said street. That Anthony had started to public square of said town, but was persuaded by Summers to go to the point where the whisky was unloaded. Anthony was a stranger in Batesville, and knew nothing of the location. Anthony did not assist in unloading the whisky and secreting same.

"Petition for reference to the people of act of February 16, 1916, known as 'Weakly Bill,' I. & B. No. 264, filed July 7, 1916. That the value of the car in controversy is five hundred dollars."

In addition to this agreed statement of facts, it was proven that J. R. Summers pleaded guilty in the mayor's court and paid fines to the town of Batesville and to the state of Mississippi for transporting and delivering whisky into the town and state. No order for the forfeiture and destruction of the automobile was entered by the mayor. After the above fines had been assessed against the defendant Summers, the district attorney filed in the circuit court of the proper district of Panola county a petition in substance alleging that this automobile, at that time in the possession of the constable, had been seized by him from the defendant Summers and from its driver, and had been used by them in the unlawful transportation into the state of alcoholic liquors. The petition then prayed that the automobile be declared forfeited to the state of Mississippi and dealt with according to law. The appellant filed an affidavit under section 1750 of the Code of 1906 as to his ownership of the automobile, and also made oath that it was not at any time used with his knowledge or consent in connection with any keeping, disposition, or transportation of intoxicating liquors, in violation of the laws of Mississippi. By agreement of counsel the case was tried in vacation before the circuit judge, who rendered judgment declaring the automobile forfeited to the state and ordering its destruction. From this judgment this appeal is prosecuted.

It is here claimed on behalf of the state that the judg-ment of the lower court is correct under section 16 of the above chapter of the Laws of 1916. This section reads as follows:

"That no property rights of any kind shall exist in the liquors mentioned in section 1 of this act, or in any other liquors, liquids, bitters or drinks prohibited by the laws of this state to be manufactured, sold, bartered, or otherwise disposed of in this state, or in any vessels, fixtures, furniture, implements, or vehicles, when the said liquors or other property mentioned are kept stored or used for the purposes of violating any law of this state; nor in any such liquors, bitters and drinks when received, possessed, kept or stored at any forbid-den place, or anywhere in a quantity or quantities for-bidden by law; and in all such cases the liquors, bitters and drinks aforesaid, and said property herein named, are forfeited to the state of Mississippi, and may be seized, or searched for and seized, under the laws of this state, and ordered to be destroyed in the manner and under the rules prescribed by law respecting con-traband liquors, or by order of the judge or court after a conviction, when such liquors or property as de-scribed hereinabove have been seized for use as evi-dence."

It is to be noted that no point was raised in the court below or is raised here by counsel for appellant that under the above section the only court which had jurisdiction to declare this forfeiture was the court which tried the defendant Summers and under whose process the automobile was seized.

Neither is it necessary for us to pass upon the ques-tion as to whether or not a court could order this prop-erty forfeited after conviction when the property had not been seized for use as evidence in the case. Apell-ant files two assignments of error in this court:

First, "the honorable court erred in ordering the claimant's automobile to be distroyed, under the undisputed facts in the case. Second, the honorable circuit court erred in finding that the automobile was used for the purpose of violating the law, as the term 'used' is mentioned in the laws of the state of Mississippi upon which this proceeding was filed."

It is only necessary for us to pass upon the first assignment of error, because of the fact that we think that the same is well taken. Section 31 of the act here in question provides:

"That this is a supplemental act and does not constitute a complete revision of the laws upon the subject matter involved."

Section 1750 of the Code of 1906 provides, among other things, that any person who claims vessels or appliances seized shall make affidavit as to his ownership, and also of the further fact that they were not used with his knowledge or consent in connection with the violation of the intoxicating liquor law. Section 16 of the act of 1916 provides in part that certain property is forfeited to the state and may be seized, "and may be destroyed in the manner and under the rules prescribed by law respecting contraband liquors." This clearly refers to section 1750 of the Code of 1906, and under this section of the Code it is a complete defense to the proceeding for forfeiture of the property when the owner proves that it was not used with his knowledge or consent in connection with the violation of the law. The agreed statement of facts shows that the appellant here was absolutely innocent of the fact that his automobile was being used by a passenger in transporting liquors into Mississippi in violation of the prohibition laws. It does not show that there was any negligence on the part of the owner of this automobile, either in the hiring of the chauffeur of the same or in the manner that he conducted his taxicab business in Memphis, Tenn. But the statement of facts conclu-

sively negatives any negligence on his part. In fact, it shows that he had given his chauffeur specific instructions not to violate the liquor laws of Mississippi, and that the chauffeur did not know the contents of the packages which were being carried by this passenger until after they reached Coldwater, Miss.

We think that the fact that the automobile was used by the passenger for this unlawful purpose makes out a *prima-facia* case of the guilty knowledge of the owner of the vehicle; but this was completely rebutted by the agreed statement of facts in the case. The United States revenue statutes are quite similar in effect to the law here under discussion. This question was well considered in the case of *United States* v. *Two Barrels of Whiskey et al.*, reported in 96 Fed. 479, 37 C. C. A. 518. The following quotation from that opinion very well expresses our view on this subject:

"It is admitted that Harvey Latham is innocent of any intention to violate the revenue law, and that his property was in the possession of Oliver Deaton without his knowledge or consent, and the question is whether the mere accident of its situation can give it a criminal character independent of its owners' fault, and thus subject it to the extreme penalty of forfeiture. Guilty knowledge or evil intent is not a necessary ingredient in statutory offenses, and the maxim that crime proceeds only from a criminal mind has no controlling effect in limiting the operation of statutory penalties to those only who consciously violate the law. There being an undoubted competency in the lawmaker to declare certain acts criminal irrespective of the motive, these investigations are limited to a judicial ascertainment of the mind of the legislature without inquiry into the mind or motive of the doer of the thing inhibited. Says Mr. Justice GRAY in *U. S.* v. *Stowell*, 133 U. S. 12, 10 Sup. Ct. 245, 33 L. Ed. 555: 'By the now settled doctrine of our court, statutes to prevent frauds upon the revenue are considered as enacted for the public

good, and to supress the public wrong, and therefore, although they impose penalties and forfeitures, not to be construed like penal laws generally in favor of the defendant, but they are to be fairly and reasonably construed, so as to carry out the intention of the legislature.'

"Penalties and forfeitures, although generally the consequences of crime or guilt, do not necessarily imply the one or the other· As the forfeiture of a man's property is one of the severest punishments that the law can inflict, the mind is naturally perplexed by two considerations of directly opposing tendency—the one being the principle of natural justice, which revolts at the punishment of the innocent; the other, the apparent necessity of doing that very thing, in view of public policy, in order to prevent those shifts and subterfuges by which the revenue laws are evaded. The statute must be clear and unequivocal which imposes upon a court the duty of punishing one man for the fault of another. The object of section 3450 is to punish all persons who, with intent to defraud the government of the tax, remove or conceal goods upon which the tax has not been paid, and, in addition to the punishment of such persons, it provides that all conveyances and animals used in the accomplishment of this unlawful purpose shall be forfeited. Undoubtedly, there is a presumption against any one whose property is found employed in this unlawful business that it is so engaged with his consent, but can it be that this presumption is irrebuttable?

"The contention of the government is that, this being a proceeding *in rem*, it is the guilty thing that has offended, and that this is to be forfeited, irrespective of any participation of its owner. If this team and wagon had been stolen from the owner, it would be clearly unjust, unreasonable, and preposterous to forfeit it because it was used by the wrongdoer in the transportation of illicit liquor. If this exception is admitted, it would follow that property has no guilty character, except as connected

with persons who have charge of it, and the result is that it is the duty of the court to inquire into the facts, and, if it appears clearly that the owner has not hired or loaned it to another for an unlawful purpose, or knowingly permitted it to be in the possession of a party likely to engage in an unlawful business, or negligently suffered it to be controlled by a stranger, whose character gave no assurance that it would not be unlawfully employed, or is in some way justly chargeable with blame or negligence, he ought not to suffer the sweeping condemnation that justly falls upon those who consciously violate the law, and upon those upon whom is laid the duty of vigilance, and who negligently or otherwise fail in that duty.''

A number of authorities are quoted in the above case; among others there are several relied upon by the state in this appeal.

Reversed, and judgment here for the appellant.

*Reversed.*