## LOWERY *v.* STATE.

Jan. 11, 1954

No. 38960          48 Adv. S. 14          69 So. 2d 213

*Merle F. Palmer,* Pascagoula, for appellant.

*John E. Stone,* Asst. Atty. Gen., Jackson, for appellee.

ROBERDS, P. J.

On the night of December 14, 1952, the sheriff apprehended Jewell Jones as Jones was driving a Ford automobile through George County in which car he was transporting a considerable quantity of whiskey. Jones was convicted. The State instituted proceedings to condemn and sell the car under Sections 2618 and 2619, Mississippi Code of 1942. Lowery interposed a claim as owner of the car. The jury returned a verdict for the State, resulting in an order for its condemnation and sale. Lowery appeals.

He raises a number of points on the appeal, one of which is the proof did not justify a finding by the jury that Lowery knowingly consented for Jones to transport whiskey in Lowery's automobile. ' It was necessary to prove these facts. Aldinger v. State, 115 Miss. 314, 75 So. 441; Skelton v. State, (Miss.), 52 So. 2d 839. We think this contention is well taken under the proof in this case.

Lowery, at the time of the trial, was twenty-five years of age, had a wife and two daughters. He was manager of a gasoline service station located in Pascagoula, Mississippi. Jones worked at that station. Jones' duties were to clean up about the place of business, wait upon motorists, fix flat tires and deliver gasoline to purchasers at and away from the station. In performing his duties away from the station he used the automobile in question.

On the date Jones was arrested it is shown, without dispute, that his sister told him over the telephone his mother was quite ill at a hospital in Gulfport. Jones informed Lowery of that and asked permission to use the automobile in question to go see his mother. Lowery agreed to such use provided Jones would bring the car back to the station that night, which Jones agreed to do. Jones left the station about six o'clock in the evening. Lowery's working hours were from six in the morning to six in the afternoon. When Lowery got to the station the next morning neither Jones nor the automobile had arrived. Lowery, shortly thereafter, drove into the vicinity where he was likely to obtain information of the whereabouts of Jones and was there informed by a woman friend of Jones that he was in jail in George County for transporting "scrap iron," which, in the vernacular of that neighborhood, meant the unlawful transportation of whiskey. Lowery went to George County and demanded of the sheriff the delivery to him of his automobile, which was refused. Jones was in jail at Lucedale but Lowery did not see him. Lowery made a second trip to try to get his car without success. He did not see Jones on that trip. However, some three weeks after the incident Lowery paid the fine for Jones and Jones was set free. Lowery testified that the money he used in paying the fine had been delivered to him by three friends of Jones. Jones had not worked for Lowery since Jones' arrest. Now these facts coupled with the testimony now to be related, constitute the basis for

the finding of fact that Jones was using the automobile for unlawful transportation of whiskey with the knowledge and consent of Lowery. The deputy sheriff of George County, before this occasion, had seen this automobile pass through Lucedale, County seat of George County. He and the sheriff, on this occasion, again saw the car passing through. It was wabbling about. They stopped the car, and arrested Jones without a warrant. They asked Jones the whereabouts of the trunk key. He replied, "It's behind me." About that time an automobile passed Jones and the officers and Jones said, "There it is, boss, there it is." The approaching car passed Jones and the officers. The sheriff testified that the passing car was a "two-tone car. Looked like a Buick to me." The deputy sheriff testified he thought the passing automobile was a two-tone car but also said, "I don't know what kind of car it was." Neither officer undertook to identify the person driving the passing automobile. In this connection it is shown that Mrs. Lowery owned a two-tone Buick automobile, and the assumption is that the approaching and passing automobile was her car being driven by Lowery. In this connection the officers testified that Jones did not have a key—at least, they could find none—to the trunk of the automobile being driven by him and in which they found the whiskey after breaking open the trunk.

There was no objection to the statements of Jones, made to the officers out of the presence of and tending to incriminate Lowery, so we consider these statements along with the other testimony. Were the foregoing circumstances, accepting all of them as being true, sufficient to prove that Lowery knew when he permitted Jones to use the car that he was going to transport whiskey therein? We do not think so. Sections 2618 and 2619, Code of 1942, under which this proceeding was had, are highly penal. The crucial testimony is that of the sheriff and his deputy as to what happened when they arrested

Jones. At most, that established that a two-toned automobile passed them while they were apprehending Jones. The sheriff said he believed it was a Buick. Mrs. Lowery owned a Buick. Neither officer said Lowery was the person driving it. Surely, that testimony, although perhaps creating a suspicion against Lowery, does not establish the fact, as must be established, that he knowingly permitted Jones to transport whiskey in his, Lowery's, automobile.

Reversed and judgment here for appellant.

*Kyle, Lee, Holmes* and *Ethridge, JJ.,* concur.