586 So.2d 756 (1991)
Bonnie THRELKELD
v.
STATE of Mississippi ex rel. MISSISSIPPI DEPARTMENT OF WILDLIFE FISHERIES AND PARKS.
No. 90-CA-0091.
Supreme Court of Mississippi.
August 21, 1991.
Rehearing Denied October 23, 1991.
Gerald A. Gafford, Sarah C. Jubb, Oxford, for appellant.
Mike C. Moore, Atty. Gen., Joan Myers, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
McRAE, Justice, for the Court:
This is an appeal from the Circuit Court of Lafayette County, involving property seized by the Department of Wildlife Fisheries and Parks for the State of Mississippi (hereinafter the Department). Bonnie Threlkeld, the record owner of a 1977 Chevrolet pick-up truck and a .22 caliber Browning rifle, appeals the order of the Circuit Court forfeiting the property to the Department. We reverse and remand for proceedings consistent with this opinion.

FACTS
An officer of the Department seized the subject property after observing the appellant's son, Chad Threlkeld, "headlighting" deer in violation of Miss. Code Ann. § 49-7-103 (1972). The Department mailed administrative forfeiture notices to Mrs. Threlkeld, the owner of the property, and her son, Chad. The appellant initiated judicial review of the proposed administrative forfeiture *757 by timely filing such a request. Miss. Code Ann. § 49-7-257(5) (1972). As a result, the department filed a petition for forfeiture. Miss. Code Ann. § 49-7-257(7) (1972). Mrs. Threlkeld answered and the hearing followed.[1]
Officer Jenkins testified about the events leading up to the seizure. His office had received reports of hunters "headlighting" deer in the area. Later that evening, he observed Chad Threlkeld and a companion spotlighting a field. He approached them and found the men with a dead deer in the back of the pick-up truck. Chad was in control of the vehicle that evening. The officer issued a citation and confiscated the property at issue. Miss. Code Ann. § 49-7-103 (1972).
At that point the State rested and the appellant moved for a directed verdict because the State failed to prove that Bonnie Threlkeld had any knowledge that the vehicle would be used for illegal purposes. The State replied that, under the statute, the owner's knowledge was immaterial. The court denied the motion, and the appellant proceeded to present her case.
She testified that the title to the vehicle was in her name and that the family used the truck primarily for farm work. All of the family members used it, including Chad. She claimed that she had not given Chad permission to use the truck on that night. On cross-examination, however, she admitted that Chad was free to use the truck whenever she or her husband were not using it. Also, Chad had free access to the keys. Curley Threlkeld, the appellant's husband, added that Chad could use the rifle at any time, but stated, of course, that Chad did not have permission to use it for illegal hunting, nor did he have any knowledge that Chad had ever used it for that purpose.
The court noted that, unlike the narcotics forfeiture law, this statute did not contain an exception for "innocent owners." Therefore, the it felt compelled to hold that the vehicle and the gun be forfeited. On appeal Bonnie Threlkeld challenges the court's interpretation of the statute and its constitutionality.

ANALYSIS
Without a doubt, the statute does not provide an exception to forfeiture for innocent owners under any circumstances. For that reason, the appellant argues that the statute violates Miss. Const. art. 3, § 24, because it provides a right (notice), without a remedy.[2] That section provides:
All courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay.
Id.
The appellant does have a remedy even if no innocent owner exception exists: to prove that the property is "innocent" of the crime. Furthermore, in line with federal law, analysis under Miss. Const. art. 3 § 14 seems more apt. That section provides that: "No person shall be deprived of life, liberty, or property except by due process of law."
Several of our decisions indicate that this Court might be willing to find more protection to innocent owners than the United States Supreme Court offered in Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), in line with some of the lower federal court decisions and the dicta in Calero-Toledo.[3] *758 In Lowery v. State, 219 Miss. 547, 69 So.2d 213 (1954), the sheriff seized a vehicle that was illegally transporting alcohol. The owner of the vehicle had loaned it to Jewell Jones who was driving the car. This Court held that it was necessary for the State to prove that the owner had knowingly consented to Jones transporting the alcohol. Similarly, in Stringer v. State, 229 Miss. 412, 91 So.2d 263 (1956), the State seized a vehicle unlawfully carrying alcohol. The driver of the car was someone other than the owner. This Court held:
[D]ue process of law provided for under Section 14 of our State Constitution and under Section 1 of the Fourteenth Amendment to the Constitution of the United States entitled him [the owner] to regain possession of his automobile pending a hearing as to his ownership thereof, and as to whether or not he had knowingly permitted it to be used for an unlawful purpose in violation of the highly penal statutes providing for its seizure and confiscation, Sections 2618 and 2619, Code of 1942.
Id. 91 So.2d at 268. (emphasis supplied). See also Kellogg v. Strickland, 191 So.2d 536 (Miss. 1966) (forfeiture statute struck down on procedural due process grounds, but this Court noted in dicta that the statute was unconstitutional "as to an owner out of possession [and without notice] and innocent of knowledge of the illegal purpose for which the firearm or other equipment is being used").[4] This is especially significant because Miss. Code Ann. §§ 2618-2619 (1942) did not contain an explicit innocent owner exception. Moreover, these decisions were in direct conflict with the prevailing U.S. Supreme Court precedent of that time. See Van Oster v. Kansas, 272 U.S. 465, 47 S.Ct. 133, 71 L.Ed. 354 (1926); Goldsmith-Grant Co. v. United States, 254 U.S. 505, 41 S.Ct. 189, 65 L.Ed. 376 (1921) (in denying the innocent owner's constitutional attack on a federal forfeiture statute the Court said "[b]ut whether the reason for [the forfeiture] be artificial or real, it is too firmly fixed in the punitive and remedial jurisprudence of the country to be now displaced"). It appears, then, that in forfeiture cases, this Court has found state constitutional protection for innocent owners in the U.S. Constitution.
Another state recently read an innocent owner exception into one of its forfeiture statutes. A New Jersey statute provided an express exception for innocent lessors or lienholders but, like the Mississippi statute, the exception did not apply to owners generally. See N.J.S.A. 2C:64-5. The *759 court held that, read literally, the statute would be constitutionally infirm because it reached "not only the property of criminals, but also to that of innocent owners who did all they reasonably could to prevent the misuse of their property." State v. 1979 Pontiac Trans Am, 98 N.J. 474, 487 A.2d 722, 727 (1985). In that case, the State seized a car because the owner's son was apprehended while using it to transport stolen goods. The owner was unaware that his son planned to use the car for that purpose. The court relied on the Calero-Toledo dicta in construing the statute to include innocent owners. Id. 487 A.2d at 728. The New Jersey court used what it termed "judicial surgery" to save the statute from constitutional attack. Id. But see State v. 36 Pinball Machines, 222 Kan. 416, 565 P.2d 236, 239-40 (1977) (court upheld constitutionality of a similar statute).
Similarly, this Court has repeatedly held that:
The rule is without exception that when the Court is confronted with a statute a literal construction of which would render it unconstitutional, the Court must adopt such a construction, when reasonably possible, as will save the statute... .
Riely v. State, 562 So.2d 1206, 1211 (Miss. 1990) (quoting Jackson v. State, 337 So.2d 1242, 1251 (Miss. 1976)).
Read literally, Miss. Code Ann. §§ 49-7-251 to 49-7-257 (1972) is violative of the Mississippi Constitution's due process guarantee. See Miss. Const. art. 3, § 14 (1890). Therefore, we construe it to include an innocent owner exception. Moreover, forfeiture statutes are penal in nature and must be strictly construed. Saik v. State, 473 So.2d 188, 191 (Miss. 1985); Zambroni v. State, 217 Miss. 418, 64 So.2d 335 (1953). The burden is upon the State to prove forfeiture by a preponderance of the evidence. Saik, 473 So.2d at 191. Since the State failed to present evidence sufficient to meet that burden, we reverse and remand for proceedings consistent with this opinion.
REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur.
ROY NOBLE LEE, C.J., dissents.
ROY NOBLE LEE, Chief Justice, dissenting:
On September 28, 1989, the Department of Wildlife received reports of individuals "headlighting" deer in an area of Lafayette County, Mississippi. That night, Conservation Officer Jenkins went to the area, surveilled it, and observed Chad Threlkeld and a companion spotlighting in a field. He approached them and discovered the men had a dead deer in the back of a pick-up truck and a rifle, which were controlled and operated by Chad Threlkeld. The officer issued a citation and confiscated the truck for violation of Miss. Code Ann. § 49-7-103 (1972). That section provides in part:
Seizure and confiscation of property used in illegal hunting as contraband.
Any firearm, equipment, appliance, conveyance or other such property used directly or indirectly in the hunting or catching or capturing or killing of deer at night with any headlight or any other lighting device, ... which may be used in the transportation of any dead or live deer taken, captured, or killed at night with or by means of a headlight or any other lighting device, ... shall be seized by any employee of the Department of Wildlife Conservation or other officer of the law including any sheriff or deputy sheriff. Upon seizure of such property proceedings shall be instituted pursuant to Sections 49-7-251 through 49-7-257.
Id.
True, the statute does not provide an exception to forfeiture for innocent owners. However, in my opinion, the statute does not violate Article 3, Section 24, Mississippi Constitution of 1890 or the United States Constitution. Section 49-7-251, Miss. Code Ann. (1972), set forth the procedure for forfeiture which includes petition for forfeiture, *760 service of process, procedure to determine ownership of property, etc., and was strictly complied with by the Department of Wildlife. Due process was afforded the appellant.
At the time of Chad Threlkeld's arrest for spotlighting deer, he was twenty years old and lived with his parents, Bonnie Threlkeld and Curley Threlkeld, on a farm. The parents had given Chad permission to use the pick-up truck, and was granted access to it, at any time when they themselves were not using it. Likewise, the same free access to, and permission to use, the rifle was given. Mrs. Threlkeld had five other vehicles registered in her name, i.e., an 1988 Mercury, 1985 Oldsmobile, 1987 GMC truck, 1984 Ford F-15 truck, and 1977 Chevy K-10 truck. No vehicle was registered in Chad's name or Curley Threlkeld's name. Insofar as it pertains to use and control, the forfeited truck was community family property with only the title being registered to Mrs. Threlkeld.
In Van Oster v. Kansas, 272 U.S. 465, 47 S.Ct. 133, 71 L.Ed. 354 (1926), the United States Supreme Court held that a person, who entrusts his property to another, is not deprived of his constitutional rights although the use was without the knowledge or consent of the owner.
It has long been settled that statutory forfeitures of property entrusted by the innocent owner or lienor to another who uses it in violation of the revenue laws of the United States is not a violation of the due process clause of the 5th Amendment.
Id. at 468, 47 S.Ct. at 134, 71 L.Ed. at 358.
In Kellogg v. Strickland, 191 So.2d 536 (Miss. 1966), this Court had before it the question of forfeiture of a firearm illegally used in hunting deer, which was confiscated by the State. At that time, the statute failed to provide for any notice, actual or constructive, to an innocent owner of equipment out of possession and the Court held that such was a violation of due process laws of the federal and state constitutions. Miss. Code Ann. § 49-7-251 remedies that infirmity.
In Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), the United States Supreme Court held that forfeiture of an innocent victim's property was not invalid under the federal constitution. For years, state courts have been strapped in the interpretation of their laws and constitutions by liberal interpretations by the federal courts of the United States Constitution, and state laws, when they have been more conservative than the liberal interpretations by the federal courts, have been held invalid. When a question of forfeiture, such as this Court has before it today, has been upheld by the United States Supreme Court, I see no reason to liberalize the interpretation of this Court and hold unconstitutional the forfeiture statute which confronts us. Our Constitution of 1890 is patterned largely upon the United States Constitution.
Historically, forfeiture statutes and the common law have been grounded on the chattel, the thing, the res, as being the offender, regardless of the owner's innocence. Here, Chad had the possession and control of the pick-up truck and rifle at all times, day or night, except when his parents actually were using them. He was a grown man, spotlighting and trespassing on another person's property two months before deer season opened. Prior to the violation, the same incidents in the area were reported to the officers. The inference is that Chad and his friend previously had engaged in the nefarious conduct. How did they dispose of the carcasses? Sell them? Take them home and eat them?
The forfeiture statute involved here contains no innocent owner exception. It is more difficult to enforce the game laws (spotlighting) than narcotics and liquor laws. Spotlighters do their dirty deeds at all hours of the night and run like the blinded deer they shoot, when wardens approach. Armed with loaded guns, they constitute a danger to the wardens, who attempt to apprehend them at night.
From the record in this case, I do not view Mrs. Threlkeld and her husband, Curley, as innocent owners of the truck and *761 the rifle which are the things used to spotlight and kill deer at night unlawfully. The innocent victims are the landowner upon whose land the Threlkelds were trespassing, the public and the State of Mississippi whose wild animals were heinously slaughtered at night, and the law abiding citizens who condemn the despicable act.
I dissent.
NOTES
[1] At the brief hearing, the parties stipulated to several facts: first, that Chad had entered a plea of nolo contendere to the citation for the illegal hunting. Currently the conviction on that plea is on appeal in the Lafayette County Circuit Court. Further, they stipulated that the Department complied with the procedural requirements of notice to the owner and possessor of the property, and that such notice was received. Miss. Code Ann. § 49-7-257(2)-(3).
[2] Appellant also argues that the statute violates the federal constitution. Without deciding this point, it appears that under Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 680, 94 S.Ct. 2080, 2090, 40 L.Ed.2d 452 (1974), the statute would survive federal constitutional attack.
[3] In Calero-Toledo, the Court rejected a boat leasing company's innocent owner defense to a forfeiture proceeding, citing the historical underpinning of such statutes. Id. at 680, 94 S.Ct. at 2090. However the Court noted, in dicta, that:

It therefore has been implied that it would be difficult to reject the constitutional claim of an owner whose property subjected to forfeiture had been taken from him without his privity or consent. Similarly, the same might be said of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property; for in that circumstance, it would be difficult to conclude that forfeiture served legitimate purposes and was not unduly oppressive.
Id. at 689-90, 94 S.Ct. at 2094-2095. (citations omitted) (emphasis supplied).
Lower courts, state and federal, seized on this "exception" to the broad sweep of forfeiture statutes and applied it in a variety of situations. See e.g. United States v. One Mercedes-Benz 380 SEL, 604 F. Supp. 1307, 1317 (S.D.N.Y. 1984) (Constitutional impediment to forfeiture arises if claimant can prove Calero-Toledo exception); United States v. One Tintoretto Painting, Etc., 691 F.2d 603, 607 (2nd Cir.1982); United States v. One 1977 Cherokee Jeep, 639 F.2d 212, 213 (5th Cir.1981) (car forfeited when owner let another take it but knew that he was involved in drug activity); State v. 1979 Pontiac Trans Am, 98 N.J. 474, 487 A.2d 722, 727 (1985).
[4] Also under the drug forfeiture statute and its innocent owner exception, this Court, in Saik v. State, 473 So.2d 188, 191 (Miss. 1985), held that the State had failed to prove forfeiture. In that case, Joe Saik was using his father's vehicle at the time of a marijuana sale. The Court disallowed the forfeiture because Joe's father did not have knowledge of the illegal use by his son, and his son did not have permission to use the car at the time. Id. at 191. This would be one factor for the courts to consider in determining if the owner did all (s)he reasonably could have done to prevent the unlawful use. See, Id. n. 3. Of course, Chad Threlkeld had permission to use the truck anytime it was available.