## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 94-CA-00390-SCT

*ONE 1992 TOYOTA 4-RUNNER, VIN #JT3VN39W2N8034941; ONE 12-FOOT SEARS BOAT; ONE 7.5 H.P. HONDA MOTOR, SERIAL NO. 1705054; ONE BOAT TRAILER, SERIAL NO. BA 13L41-AA16051; ONE DIP NET; ONE ICE CHEST; ONE ELECTRICAL DEVICE*

*v.*

*STATE OF MISSISSIPPI, EX REL., MISSISSIPPI DEPARTMENT OF WILDLIFE FISHERIES AND PARKS*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/01/94 |
| TRIAL JUDGE: | HON. R. I. PRICHARD, III |
| COURT FROM WHICH APPEALED: | LAWRENCE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ALFRED L. FELDER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JOAN MYERS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND VACATED IN PART - 8/27/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/17/98 |

EN BANC.

BANKS, JUSTICE, FOR THE COURT:

¶1. We are confronted in this case with a challenge to the forfeiture of several items of property pursuant to the criminal convictions of Jon and Linda Devine, who were convicted of illegally fishing with the aid of an electrical device and possession of the illegally acquired fish. Because we find that the forfeiture statute at issue here has been amended to exclude titled vehicles, we reverse the forfeiture of the appellant-vehicle.

### I.

¶2. At about 9:00 a.m. on August 29, 1993, Officer Randy Carr, a law enforcement officer of the

Mississippi Department of Wildlife, observed Jon and Linda Devine on a boat in the Pearl River in Lawrence County. He was standing in plain clothes on the river bank, south of Monticello. He estimated that he was two- to three hundred yards away when he first saw them, but repositioned himself so as to be about thirty-five yards away. He believed them to be shocking up fish, a method of fishing in which a person drags an electrical wire over the edge of the boat. The weighted wire carries a current which shocks motley catfish on the bottom of the river, causing them to rise to the surface.

¶3. Officer Carr testified that he saw a wire hanging over the boat's edge, and saw the fish come to the water's surface, and saw Mrs. Devine dip one fish up. He did not observe any fishing reels or poles being utilized at that time to obtain fish, nor did he actually observe the shocking device.

¶4. After watching them for a while and obtaining the registration number of the boat, Officer Carr returned to the water park where he figured the people in the boat (later thought to be the Devines) had parked their car. At this time, he ran into Officer Kenneth Tanksley, another agent of the Department of Wildlife who was in uniform. After sitting with Officer Tanksley for a while, the two officers heard a boat coming upriver. Officer Carr then explained to Officer Tanksley that he had observed some people shocking fish in the river while he was on the bank. Officer Carr made no effort at this time to obtain an arrest or search warrant, testifying that he did not believe he needed one.

¶5. At around noon, Officers Carr and Tanksley observed Mrs. Devine, whom Officer Carr believed was one of the people he had seen shocking fish on the river, enter the parking lot of the Atwood Water Park from some woods that precede that river bank and get into the defendant Toyota 4-Runner. She proceeded to back the car down to the ramp on the river bank in order to load a boat. Officers Carr and Tanksley allowed them to load up their fishing equipment and get away from the river somewhat so they would not be able to throw the evidence back into the river.

¶6. The officers then stopped the Devines, after they had loaded up the boat and pulled away from the river's edge. Officer Carr saw the catfish in their boat, and asked Mr. Devine what he'd caught them on. Mr. Devine replied that he had caught them on shrimp. After remarking that he had never known flathead catfish to bite shrimp, and finding no hook marks in the fishes' mouths, he informed the Devines that he had observed them shocking up fish and they were consequently under arrest.

¶7. Officer Carr then testified that both Devines, after being read their *Miranda* rights, then gave the officers consent to search their vehicles and Mrs. Devine's purse. Carr stated during his testimony that after asking for and receiving consent to search the vehicle, he told Mrs. Devine "Ma'am, if you don't mind, first thing we do, if you'd empty your purse out here on the ground, we'll look at that first." Mrs. Devine testified at the suppression hearing that she emptied her purse because Officer Carr instructed her to.

¶8. During this search, Officer Carr found what he believed to be a shocking device in a leather case in Mrs. Devine's purse, and seven flathead catfish. Neither officer found any wires or batteries that Officer Carr conceded would be necessary to operate the device. They subsequently confiscated the dip net, the electronic device thought to be used to shock fish, a dip net, the boat and trailer, and the automobile. Neither officer tested the confiscated electronic device to see whether it in fact was a device that would shock fish to a water surface.

¶9. The Devines were charged with taking fish with an electrical device and possession of illegally obtained fish, two misdemeanors. Their Toyota 4-Runner, boat, trailer, ice chest (that had contained the fish) and dip net were seized at the time of their arrest and a petition for forfeiture was subsequently filed by the Department of Wildlife. Prior to the trial, the Devines moved to suppress all evidence obtained pursuant to their arrest and the search of their vehicles on the grounds that the statutes which enabled the warrantless searches and seizures by the gaming commission were unconstitutional insofar as they did not require an officer to first have probable cause. They also argued in the alternative that even if a probable cause requirement could be read into the enabling statutes, the statutes cannot constitutionally authorize a warrantless arrest several hours after the commission of the misdemeanors, such as was experienced by the Devines.

¶10. Following a hearing, the circuit court denied the suppression motion. In his ruling from the bench, he found that the operative statute, § 49-1-43,[1] enabled the Department Officers to search the Devines' vehicles with or without their consent, and furthermore without a warrant, as long as a trier of fact concluded that Officer Carr observed the Devines taking fish illegally in his presence. The court further held that the statute validated the search no matter how many hours elapsed between the observed behavior and the search.

¶11. The Devines were convicted of the criminal charges in the Justice Court of Lawrence County, and after an appeal and a trial de novo in the circuit court, were convicted again of all charges by a jury on March 30, 1994. On April 1, 1994, the circuit court sentenced Mr. and Mrs. Devine each to $1100 fines, $182 state assessments, court costs, and 15 day county jail sentences to be suspended upon payment of all fines, assessments, and costs. The Devines moved for a judgment notwithstanding the verdict, reiterating their contentions that the operating statutes were unconstitutional and adding a claim that there was no statute that criminalized the possession of fish taken by illegal means. The circuit court promptly denied the motion.

¶12. Following these convictions, the State immediately moved for summary judgment on the petition for forfeiture, arguing that the conviction on the companion criminal charges as well as the findings of fact that accompanied those convictions eradicated any issues of fact that were material to the adjudication of the forfeiture petition. The Devines objected to this motion, incorporating and reiterating the objections raised in their suppression motion in the criminal matter.

¶13. On April 1, 1994, the circuit court granted the summary judgment, and ordered the forfeiture of all sought property.[2] He reasoned that since the jury in the companion trial had specifically found pursuant to Jury Instruction C-2 that Officer Carr had in fact observed the Devines shocking fish, the doctrine of collateral estoppel eliminated any issue of fact with regard to the commission of the actual crime as well as eliminated any query as to whether any of the defendant property had been directly or indirectly used in the course of illegally shocking fish. He further noted from the bench that the Toyota 4-Runner was properly forfeited because it had been utilized to retrieve the boat and its contents from the river. The automobile also contained the purse in which the electronic device was found. The court finally adjudged all the defendant properties to be forfeited to the Mississippi Department of Wildlife, Fisheries and Parks.

¶14. Having incorporated all of the evidence and objections raised in the criminal proceeding, the defendant properties presently appeal this order of forfeiture.

## II.

### A.

¶15. The appellant properties first contend that they should not have been seized and forfeited because the Devines were unlawfully arrested without a warrant more than three hours after the alleged misdemeanors were observed. They cite Miss. Code Ann. § 99-3-7, which states in relevant part that an officer or private person may arrest someone without a warrant where an indictable offense has been committed in his presence. They further cite *Smith v. State*, 228 Miss. 476, 87 So. 2d 917 (1956) (holding that an officer may not depart from the scene of an observed crime and later return to arrest the offender without a warrant, since any reasonable justification for failing to obtain a warrant had disappeared) and *Milton v. City of McComb*, 200 Miss. 15, 26 So. 2d 463 (1946) (stating in dicta that a warrantless arrest could only have been lawfully made at the time of the commission of the offense). Noting that Officer Carr stipulated that the only unlawful behavior that he had observed the Devines to engage in occurred some three hours before their arrest, the appellant properties contend that the evidence that was obtained following that unlawful arrest should have been suppressed. They next conclude in summary fashion that the seized property should not have been forfeited pursuant to the civil forfeiture statutes, §§ 49-7-251 through -257.

¶16. The trial court overruled the Devines' motion to suppress, finding that the officers had the authority to make the search pursuant to § 49-1-43 no matter how many hours after the observed crime. The court also found that the officer had probable cause to believe that the crime had occurred and therefore could lawfully conduct the whole search without a warrant.

¶17. This assignment of error is without merit, even assuming arguendo that the Devines' arrest was unlawful. The court's finding that the officers had statutory authority as well as probable cause to make the search that was independent of the probable cause to make the arrest is manifestly correct.

¶18. Section 49-1-43(4)(b)( Supp. 1997) reads as follows:

> The director [of the Department of Wildlife, Fisheries and Parks] and each conservation officer shall have power, and it shall be the duty of the director and of each conservation officer: To search where the conservation officer has cause to believe and does believe that animals, birds or fish, or any parts thereof, or the nest or eggs of birds . . . are possessed in violation of law or regulation and in such case to examine, without warrant, the contents of any boat, car, automobile or other vehicle, box, locker, basket, creel, crate, game bag or other package, to ascertain whether any law or regulation for the protection of animals, birds, or fish have been or are being violated . . . .

¶19. This section quite plainly authorized the officers' search of the Devines' boat, Toyota 4-Runner, and Mrs. Devine's purse, given Officer Carr's testimony that he observed them in the boat shocking fish out on the river. The section makes no reference to any time limitation on conducting searches after the "cause to believe" in criminal activity arises. The fact that Officer Carr waited until the Devines returned from the river does not in any way diminish his statutory authority to conduct the search of their vehicles on the basis of what he observed.

¶20. In addition to having given rise to his "cause to believe" within the meaning of his statutory

authority, Officer Carr's observations also gave rise to a common law probable cause to conduct a warrantless search of the Devines' vehicles that exists independently of his express statutory duty to do so. *United States v. Ross*, 456 U.S. 798, 806 (1982) (movable vessels may be stopped and searched on facts giving rise to probable cause that the vehicle contains contraband); *Rooks v. State*, 529 So. 2d 546, 555 (Miss. 1988) (defining probable cause to search as a set of facts available to an officer that would lead a person of reasonable intelligence to believe that then and there contraband or evidence material to criminal investigation would be found).

¶21. Officer Carr testified at trial that he was aware from his experience [he had seized eight different shocking devices] that he had seen the devices come in small packages, which would give him reason to think the device could be in Mrs. Devine's purse. *See California v. Acevedo*, 500 U.S. 565, 579-80 (1991) (eliminating the previous warrant requirement for searches of packages and containers like luggage found inside of vehicles that have been searched pursuant to warrantless probable cause; probable cause is defined by the object of the search and places within the vehicle in which the object is likely to be found); *Townsend v. State*, 681 So. 2d 497, 508 (Miss. 1996) (noting that probable cause arising out of the scent of marijuana emanating from a stopped vehicle allowed the search of all containers in the car).

¶22. The fact that Officer Carr made his observations several hours before he conducted the resultant search of the vehicles does not diminish his authority to do so without a warrant where, as here, he spent those intermittent hours awaiting the vehicle's return to shore (this is discussed in greater depth below under Point B). *Chambers v. Maroney*, 399 U.S. 42 (1970) (upholding the validity of a warrantless search of a vehicle that was based upon probable cause that was conducted some time after the cause arose). Thus, because of the presence of this probable cause, the Devines' criminal convictions are not flawed as incident to a possibly unlawful arrest in this respect, and the subsequent and collateral forfeiture is not assailable on this ground.

**B.**

¶23. The appellant properties next contend that § 49-1-43 does not authorize warrantless searches such as were experienced by the Devines on the basis of observations that occurred three hours before the search. They argue that if the statute does in fact authorize such delayed searches, it violates Article III, Section 23 of the Mississippi Constitution, which prohibits unreasonable searches. They further argue that the breadth of search that is authorized by § 49-1-43 amounts to a general warrant that this Court has strenuously prohibited in *Carney v. State*, 525 So. 2d 776 (Miss. 1988).

¶24. They contend that the trial court erred in holding that the Devines were lawfully arrested pursuant to § 49-1-43(4)(d) (Supp. 1997), which provides the power and appoints the duty to the director and conservation officers to:

> arrest, without warrant, any person committing or attempting to commit a misdemeanor, felony or a breach of the peace within his presence or view and to pursue and so arrest any person committing an offense in any place in the state where the person may go or be.

¶25. Finally, the Devines note that although the Officers claimed that the Devines consented to the search of their vehicles and Mrs. Devine's purse, the Devines deny that they ever gave consent. Moreover, Officer Carr admitted that they had not told the Devines that they had to right to refuse to

consent to any search, and thus any consent that they gave was not a constitutionally sufficient waiver.

¶26. The appellants' arguments about § 49-1-43 are without merit insofar as they do not support a grant of any relief. First, the warrantless search of the Devines vehicles was entirely proper. The vehicle exception to the warrant requirement arises out of both a diminished expectation of privacy in a vehicle as well as the exigency created by the peculiar mobility of vehicles that enables them to flee the jurisdiction or remove the evidence during the time that would be required to obtain a warrant. *Carroll v. United States*, 267 U.S. 132, 158-59 (1925). These features give rise to an exception to the normal requirement that official warrants precede police searches.

¶27. In this case, the Devines have argued that Officer Carr should have gone to get search and arrest warrants in the three hours between the time that he observed the unlawful conduct and the time he stopped and arrested them, and searched their vehicles. They alternatively argue that he should have secured the warrants immediately after observing them shocking the fish and executed them at some later time or date.

¶28. We find this postulation to be unreasonable. Officer Carr returned to the Water Park to await the Devines' return. He had no way of knowing that they would be gone for three hours; had he gambled that they would be gone long enough for him to obtain a warrant, it being Sunday morning, the Devines could have easily returned while he was gone and escaped the jurisdiction with their vehicles, or otherwise destroyed the evidence. Thus, his failure to obtain a search warrant was precisely due to the principle that supports the vehicle exception to the general warrant requirement: the observed vehicles and evidence could have easily vanished while the officer was obtaining the warrant. Therefore the delay between the observation of the unlawful conduct and the search did not in any way undermine the necessity of executing the search without a warrant. Since Officer Carr searched the vehicle as soon as he could stop it, which occurred as soon as the boat was removed from the river, the Officer's search was properly within the scope of warrantless searches of vehicles upon probable cause. Insofar as § 49-1-43 authorized the searches that were conducted in this case, it did not violate any constitutional restriction on the warrantless search of vehicles.[3]

¶29. The Devines' second contention, that § 49-1-43 is unconstitutional in that it allows the warrantless arrest of people after a delay has elapsed, does not avail them of any relief either. As we have already explained, even if the arrest of the Devines was unlawful, the evidence that was seized pursuant to the searches of their vehicles was nevertheless admissible because the officers had independent probable cause to search the vehicles. Therefore, their convictions are not flawed because of any infirmity in their arrest, and the subsequent forfeiture is not assailable on that ground.

¶30. That said, we additionally hold that the Devines' arrest was not unlawful, because the delay between Officer Carr's observations of the Devines wrongdoing and their subsequent warrantless arrest did not violate any state or federal constitutional restriction on warrantless arrests. This Court held in *Smith v. State,* 228 Miss. 476, 87 So. 2d 917(1956), that an arrest for a misdemeanor committed in the arresting officer's presence must be made as quickly as circumstances permit:

> After an officer has witnessed a misdemeanor, it is his duty to then and there arrest the offender. Under some circumstances, there may be justification for delay, as for instance, when the interval between the commission of the offense and the actual arrest is spent by the officer in

pursuing the offender, or in summoning assistance where such may reasonably appear to be necessary . . . . If, however, the officer witnesses the commission of an offense and does not arrest the offender, but departs on other business, or for other purposes, and afterwards returns, he cannot then arrest the offender without a warrant; for then the reasons for allowing the arrest to be made without a warrant have disappeared.

*Id.* at 480, 87 So. 2d at 919 (citations omitted).

¶31. This Court reversed the conviction in that case, finding that there was no reason why the law enforcement agent who had observed the crime could not have then effected the arrest. The delay was caused when the officer departed the scene of the misdemeanor to attend to business foreign to the arrest. *See also* **Protective Life Ins. Co. v. Spears**, 231 So. 2d 510, 512 (Miss. 1970) ("[a] private citizen cannot arrest without a warrant for a misdemeanor theretofore committed, unless pursuit for the purpose of arrest was begun immediately") (citing **Smith v. State**, 228 Miss. 476, 87 So. 2d 917 (1956)).

¶32. In this case, however, the delay was caused by Officer Carr awaiting the Devines' return to the shore. He testified that he did so because he was on foot at the time he observed their crimes in the middle of the river, and that he did not want to give them the opportunity to throw the evidence away. As the State notes in its brief, Officer Carr did not depart to attend to business foreign to the arrest for the crime that he observed, but departed to await their return to shore. Furthermore, noted above in the analysis of the delayed search, Officer Carr had no way of knowing whether he would have enough time to obtain an arrest warrant before they returned. Thus, he arrested the Devines as soon as circumstances permitted after observing the misdemeanor, and did not need a warrant pursuant to § 99-3-7(1)(Supp. 1997) ("An officer . . . may arrest any person without warrant, for an indictable offense committed, or a breach of the peace threatened or attempted in his presence").[4] *See also* **Thomas v. State**, 208 Miss. 264, 44 So. 2d 403 (1950)(law enforcement agents may arrest without warrants for misdemeanors committed in their presence).

¶33. Thus, it is clear that Section 49-1-43 was not applied to the Devines in any unconstitutional fashion, and thus this assignment of error is without merit. *See* **Mississippi Bd. of Nursing v. Belk,** 481 So. 2d 826, 831 (Miss. 1985) (one generally has no standing to complain of unconstitutionality of statute when its application to him has been lawful).

**C.**

¶34. The appellant properties next contend that, even if their convictions were lawfully obtained, the trial court erred in granting the forfeiture of any items besides those that were being utilized during the span of Officer Carr's observation of them shocking the fish. Thus, they argue that the Devines' Toyota 4-Runner and the boat trailer cannot be lawfully forfeited, since they were not being utilized during the course of Officer Carr's observation of the misdemeanor.

¶35. This argument is predicated on the presumption that Officer Carr could have only lawfully arrested the Devines at the time that he was observing them; had he done it then, the State would have been entitled to seize the boat, motor, fishing gear, chains over the side of the boat, and the shocking device. Since he illegally arrested them after a three hour delay, the Devines reiterate that all of the evidence he obtained must be suppressed, they must be released, and all personal property that

was seized must be returned to them. Finally, they suggest without support that Officer Carr delayed his arrest in order to subject the greatest amount of personal and real property to forfeiture.

¶36. The Devines' argument is without merit. First, there is absolutely no evidence in the record in this appeal that Officer Carr deliberately waited to arrest the Devines until he could seize the boat trailer and the Toyota 4-Runner, as well as the properties he had observed on the river. Second, to the extent that the appellant properties argue that the only items seizable were those that were observed at the time when a lawful arrest could have been made, which they theorize could have only occurred while Officer Carr was actually observing their conduct, we have held that the arrests in this case were lawful when made, as were the searches; thus, the seizures were incident to lawful arrests. Finally, as the State notes, the plain text of the statute authorized the forfeiture of all of the properties since they were directly and indirectly used to obtain the fish through shocking, and transport the contraband fish and illegal equipment away from the river. The fish were found in the boat, which was towed on the trailer attached to the Toyota 4-Runner, in which the shocking device was found. Although the seizures are additionally subject to the constitutional constraints of the Excessive Fines Clause of the Eighth Amendment which are analyzed under Point E, all of the defendant properties were properly *subject* to forfeiture under the statutory definition of § 49-7-103.

## D.

¶37. The appellant properties next contend that the forfeiture statute under which they were seized violates Article III, Section 23 of the Mississippi Constitution in that it does not articulate a standard by which law enforcement agents can determine what property is seizable. They note that the statute does not explain that the seizure must follow a lawful arrest, or probable cause to believe that the violation has occurred, belief beyond a reasonable doubt, or any other standard. The appellants argue that the lack of any standard by which to assess that the properties were unlawfully used grants a "general warrant" to the Department of Wildlife to seize property.

¶38. Section 49-7-103 (as amended in 1989) read in its entirety:

> Any firearm, equipment, appliance, conveyance or other such property used directly or indirectly in the hunting or catching or capturing or killing of deer at night with any headlight or any other lighting device, or in fishing for, or killing or capturing fish by using a telephone, magneto, battery, or any other electrically operated device including but not limited to any truck, automobile, motor vehicle, trailer, jeep, boat, outboard motor, airplane, net, light, battery, magneto, wires, telephone device, or any other device or contrivance or other vehicle, or which may be used in the transportation of any dead or live deer taken, captured, or killed at night with or by means of a headlight or any other lighting device, or any dead or live fish killed, stunned, captured, or taken by using a telephone, battery, magneto, or any other electrically operated device, shall be seized by any employee of the Department of Wildlife Conservation or other officer of the law including any sheriff or deputy sheriff. Upon the seizure of such property proceedings shall be instituted pursuant to Sections 49-7-251 through 49-7-257.

¶39. Obviously, this Section makes no mention of any standard by which an officer is to assess that property has been used in violation of the game and fish laws. As such, it may violate Article III, Section 23 of the Mississippi Constitution as the appellants allege to the extent that, on its face, it allows unreasonable seizures.[5] It also may violate the Fourth Amendment of the federal

constitution. *See Soldal v. Cook County, Ilinois, 506 U.S. 56, 67-68 (1992)* (reiterating that seizures of property are subject to Fourth Amendment scrutiny even where no Fourth Amendment search has occurred).

¶40. This Court has repeatedly held that when it is confronted with a statute a literal construction of which would render it unconstitutional, the Court must adopt a construction that will save the statute, when reasonably possible. ***Threlkeld v. State ex rel. Mississippi Dep't of Wildlife Fisheries & Parkes***, 586 So. 2d 756, 759 (Miss. 1991). We hold today that this statute must be construed to require law enforcement agents to have probable cause to believe that the subject property has been used, directly or indirectly, to accomplish the various violations that are enumerated. It is axiomatic that probable cause has been the consistent touchstone of reasonable seizures, the threshold restriction articulated in the Fourth Amendment of the federal constitution and Article III, Section 23 of the Mississippi Constitution *Acevedo, 500 U.S. at 581* (Scalia, J., concurring) (noting that the warrant requirement, which issues only upon showing of probable cause, is not express but implicit in the Fourth Amendment's requirement that searches be reasonable); *Soldal, 506 U.S. at 68* (warrantless seizures of property are reasonable only because there is probable cause to associate the property with criminal activity).

¶41. Although this Court has not previously construed a probable cause predicate in seizures pursuant to forfeiture statutes that do not explicitly contain one, several other forfeiture statutes do expressly require law enforcement agents to have probable cause to believe the subject property is facilitating unlawful conduct: ***Miss. Code Ann. 41-29-153(b)(4) (1993)*** (officers must have probable cause to believe that property was used or intended to be used in violation of the Uniform Controlled Substances Law before they may seize the property without a warrant); *see also* ***One Hundred Seven Thousand Dollars ($107,000.00) U.S. Currency v. State ex rel. Harrison County Sheriff's Dep't***, 643 So. 2d 917, 923 (Miss. 1994) (reversing forfeiture in part because no such probable cause was shown); ***Miss. Code Ann. 67-1-17(3)(c)(1991)*** (requiring officers to have probable cause that properties were used or intended to be used in violation of the Local Option Alcoholic Beverage Control laws before seizing them without process); ***Miss. Code Ann. 97-15-30(5)*(1994)** (allowing warrantless seizure of items subject to forfeiture where officers have probable cause to believe that property has been used in unauthorized disposal of solid waste).

¶42. Other states have articulated a probable cause standard for seizures pursuant to civil forfeiture statutes. *See, e.g.,* ***State v. Seventeen Thousand Five Hundred Dollars ($17,500) Cash***, 609 So. 2d 978-79 (La. Ct. App. 1992) (quoting La. R.S. 40:2606, "[p]roperty may be seized for forfeiture by any law enforcement agency . . ."Property may be seized for forfeiture by any law enforcement agency designated by the district attorney upon process issued by any district court. The court may issue a seizure warrant on an affidavit under oath demonstrating that probable cause exists for its forfeiture or that the property has been the subject of a previous final judgment of forfeiture in the court of any state or of the United States") *vacated*, 612 So. 2d 90 (La. 1993); ***Fifty-six Thousand Seven Hundred Dollars in U.S. Currency v. State***, 730 S.W.2d 659, 661 (Tex. 1987)(law enforcement must have probable cause for seizure pursuant to Texas forfeiture statutes, meaning a reasonable belief that a substantial connection exists between property to be forfeited and the criminal activity); ***Jones v. State***, 681 So. 2d 923, 924 n.1 (Fla. Dist. Ct. App. 1996) (requiring probable cause that property was used or attempted to be used in violation of the Florida Contraband Forfeiture Act, citing Fl. St. Ann. § 932.703(2)(c)).

¶43. In line with those cases and the other forfeiture statutes in the Mississippi Code, we hold that law enforcement agents must have probable cause to believe that property has been used in violation of the law before conducting seizures pursuant to § 49-1-43.

¶44. That said, the appellant properties are nonetheless not entitled to any relief from seizure. As we have already noted, Officer Carr had a reasonable belief that the Devines' vehicles and Mrs. Devine's purse contained the equipment that was utilized in their unlawful conduct, as well as the contraband fish. His observations that gave rise to that reasonable belief also gives rise to a reasonable belief that the boat, trailer, shocking device, motor, dip net, ice chest, and the Toyota 4-Runner were directly or indirectly involved in facilitating the illegal fishing and transporting the contraband fish. Thus, while the forfeiture statute at issue here does need a probable cause requirement read into it, which we do today, such requirement does not avail the appellant properties of any relief.

**E.**

¶45. Finally, the appellant properties contend that the trial court erred in granting summary judgment to the State in their petition for forfeiture because there remained material issues of fact about whether the forfeiture constituted an excessive fine under Article III, Section 28 of the Mississippi Constitution and the Eighth Amendment to the Constitution of the United States. They submit that the forfeitures in this case would be unconstitutionally excessive insofar as the Toyota 4-Runner was not sufficiently instrumental in the commission of the illegal activity to be constitutionally forfeited. They argue that the 4-Runner had nothing to do with the illegal activity, shocking the fish itself. They further note that the value of the Toyota 4-Runner exceeded the maximum criminal fine available for the offenses for which they were convicted by eighteen times. They urge a remand to the trial court for a fuller development of whether the forfeiture of the Toyota 4-Runner violated the constitutional prohibitions on excessive fines.

¶46. This Court will review de novo a trial court's decision to grant summary judgment. ***Short v. Columbus Rubber & Gasket Co.***, 535 So. 2d 61, 63 (Miss. 1988). In its written Final Judgment, the trial court granted the summary judgment, finding without any factual or legal elaboration that the forfeiture of the properties was appropriate under the statute and did not constitute an excessive fine in violation of the state or federal constitution.

¶47. The appellant properties contend that summary judgment was improper because material issues of fact remained with regard to an excessive fines analysis of the forfeiture. At the hearing, after enumerating the factual findings that it would adopt via collateral estoppel from the criminal cases, the trial court asked the appellants' counsel whether he wished to offer "any reason at this time why the motion for summary judgment should not be sustained and that the Court find that there's no reason for the delay of the entry of a final judgment and proceed to enter a final judgment in favor of the State of Mississippi on their motion for summary judgment since everyone is in agreement there are no material issues or disputes as to material issues of fact that have not already been concluded by the jury in the criminal case?" Appellants' counsel responded that he had filed an answer to the State's original petition and an answer to the motion for summary judgment, and that they did not agree that the jury found those facts. He did not elaborate any further on the excessive fines claim, although the claim had been raised in the documents to which he directed the court's attention. The trial court pressed them: "But we have no other issues of material fact that have not been resolved in the

criminal matter, do we?" Appellant's counsel replied "That's correct, Your Honor." The appellant properties do not presently elaborate on these unresolved factual issues. In any event, because they did not develop the factual record in support of their claim below, they cannot now be heard to complain that the summary judgment was improper in light of remaining disputed issues of fact regarding the excessive fines analysis.

¶48. Nevertheless, we find that the summary judgment with regard to the Toyota 4-Runner was improper as a matter of law. Mississippi Code Ann. § 49-7-103 was amended to exclude motor vehicles: "Provided, however, that no motor vehicle that is of the type required to be titled under the Mississippi Motor Vehicle Title Law is subject to forfeiture." The effective date of this statute was July 1, 1995. The Devine's conduct which led to the forfeiture of their vehicle occurred well before that in 1993.

¶49. This Court considers statutory amendments to effect a complete repeal of the statute's previous form. *Beatty v. State*, 627 So. 2d 355, 357 (Miss. 1993) (collecting cases). We further reiterated in *Beatty* that a rational reading of an amended statute compelled its application to all pending causes that involve the statute that was amended. *Beatty,* 627 So. 2d at 358 (citing *Bell v. Mitchell,* 592 So. 2d 528 (Miss. 1991); *City of Clarksdale v. Mississippi Power & Light Co.*, 556 So. 2d 1056 (Miss. 1990); *Parker v. Bailey,* 437 So. 2d 33 (Miss. 1983)).

¶50. In line with those cases, we will apply the amendment to Miss. Code Ann. § 49-7-03 to this case, and accordingly reverse the order of forfeiture of their Toyota 4-Runner.

## CONCLUSION

¶51. In conclusion, we hold that the grant of summary judgment and order of forfeiture against the appellant properties is reversed inasmuch as the forfeiture of the Toyota 4-Runner violates the amended form of Miss. Code Ann. § 49-7-103, which was amended prior to the conclusion of this cause. We further hold that seizures pursuant to § 49-7-103 may be made only upon probable cause to believe that the prohibited conduct has occurred.

¶52. **AFFIRMED IN PART; REVERSED AND VACATED IN PART.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., SMITH, MILLS AND WALLER, JJ., CONCUR. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. ROBERTS, J., NOT PARTICIPATING.**

### McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶53. I join the majority to the extent that it holds that amended Miss. Code Ann. § 49-7-103 excludes motor vehicles and requires law enforcement officers to have probable cause to believe that property

subject to forfeiture has been used to accomplish illegal activity. Nonetheless, while I agree that the forfeiture of the Toyota 4-Runner should be reversed and vacated, reversal should be premised on the Department of Wildlife officers' lack of probable cause in this case. Therefore, to the majority's finding of probable cause, I dissent.

1. The trial court erroneously cited §  41-1-43 as the enabling authority. This appears to be a mere mistake, since a section of that number does not exist.

2. The court also ordered the Department of Wildlife to pay off the $13,268 outstanding lien on the Toyota 4-Runner that was held by Trustmark National Bank.

3. As the State notes, the Devines' reliance on **Carney** for the prohibition on general warrants is misplaced, since **Carney** is about the warrantless search of a residence.

4. An amendment that was added to § 49-1-43(4)(d) repeated this language with regard to Department of Wildlife officers: "[t]he director and each conservation officer shall have power, and it shall be the duty of the director and of each conservation officer . . . [t]o arrest, without warrant, any person committing or attempting to commit a misdemeanor, felony or a breach of the peace within his presence or view and to pursue and so arrest any person committing an offense in any place in the state where the person may go or be."

The Devines argue that this provision is unconstitutional insofar as it permitted Officer Carr to arrest them three hours after observing their illegal conduct. This provision, however, was added to the statute in 1994 (Laws, 1994, ch. 592, Section 1, effective April 8, 1994) and thus was not in force at the time of their crime, which occurred on August 29, 1993. Thus, its constitutionality is irrelevant to their case.

5. Article III, Section 23 provides that "The people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search . . . ."